TUMBLEWOOD BOWLING CORPO-
RATION, Appellant,

v.

P. T. MATISE, Appellee.

No. 6733.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 25, 1965.

Rehearing Denied March 24, 1965.

John P. Blair, Beaumont, for appellant.

Ernest L. Sample, Beaumont, for appellee.

PARKER, Justice.

Appellee P. T. Matise filed suit against the appellant Tumblewood Bowling Corporation to recover $15,000.00 for services rendered by appellee to appellant. Among other services performed, appellee sold approximately $150,000.00 worth of the common stock of Tumblewood Bowling Corporation to various people in the Beaumont area, claiming a fee or commission of 10%. Relying upon the provisions of The Texas Securities Act, appellant denied liability on the grounds that (a) appellee was not a licensed securities dealer or salesman and (b) that appellee used "public solicitation" or "advertising" in selling the common stock of appellant corporation. Judgment was rendered for appellee upon the jury verdict.

In answer to special issues, the jury found that the sale of stock of appellant corporation was accomplished without the use of advertisements and without any form of public solicitation; that the commission or fee of appellee for the sale of stock was to be 10% of the stock sold. It is appellee's contention that although he did not have a license under The Securities Act as a dealer or salesman that he was exempt from the provisions of The Securities Act because the stockholders did not exceed thirty-five and that the actual sale of stock was made without the use of advertisements or any form of public solicitation.

This suit involved the violation of a statute passed for the protection of the public. If appellee did not violate the statute, he was entitled to recover his commission. We are not dealing with equitable principles here. This court is not dealing with whether or not stock in the corporation was a good investment. One who claims an exemption from registration under The Securities Act has the burden of proving such exemption. Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704 (1956). If exempt therefrom, appellee was entitled to recover.

The Texas Securities Act, Art. 581, R.C. S., as it existed at the time this cause arose, provided that a small, closely held corporation could sell stock without being required to register its stock with the State Securities Board. This type of sale is considered an exempt transaction under Section 5 of The Securities Act. Article 581–5(I.), R.C.S., provided that:

"Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation subscription, dealing in or delivery of any security under any of the following transactions or conditions:

"I. The sale by any corporation of its securities * * *, where the total membership or stockholders will not thereafter exceed thirty-five (35), and where the sale is made without the

use of *advertisements* or any form of *public solicitation*." (Emphasis added)

The word "sale" is defined in The Texas Securities Act, Art. 581-4, Subdiv. E, as follows: (The Securities Act in effect in 1960 controls.)

"E. The terms 'sale' or 'offer for sale' or 'sell' shall include every disposition, *or attempt to dispose of a security for value*. The term 'sale' means and includes contracts and agreements whereby securities are sold, traded or exchanged for money, property or other things of value, or any transfer or agreement to transfer, in trust or otherwise. Any security given or delivered with or as a bonus on account of any purchase of securities or other thing of value, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value. The term 'sell' means any act by which a sale is made, and the term 'sale' or 'offer for sale' shall include a subscription, an option for sale, a solicitation of sale, a solicitation of an offer to buy, an attempt to sell, or an offer to sell, directly or by an agent or salesman, by a circular, letter, or advertisement or otherwise, including the deposit in a United States Post Office or mail box or in any manner in the United States mails within this state of a letter, circular or other advertising matter. Nothing herein shall limit or diminish the full meaning of the terms 'sale,' 'sell' or 'offer for sale' as used by or accepted in courts of law or equity. The sale of a security under conditions which entitle the purchaser or subsequent holder to exchange the same for, or to purchase some other security, shall not be deemed a sale or offer for sale of such other security; but no exchange for or sale of such other security shall ever be made unless and until the sale thereof shall have been first authorized in Texas under this Act, if not exempt hereunder, or by other provisions of law. Provided, however, advertising when made in compliance with Section 22 shall not be deemed a sale." (Emphasis added)

Appellee contends in its brief with reference to a brochure prepared by him:

"It is the contention of the Appellee, on the other hand, that this fact does not constitute a defense, unless it is shown that stock was *actually sold* by the use of such a brochure, and also that the brochure in question comes within the meaning of the term 'advertisement' as used in Art. 581, VATS."

It will be noted that under the definition of the word "sale" as used in The Securities Act, that "sale" includes *an attempt* to sell the stock.

The term "public solicitation" is not defined in The Texas Securities Act. The term "solicitation" is defined in Black's Law Dictionary, 4th Ed., page 1564, as "Asking: enticing: urgent request: *Any action which the relation of the parties justifies in construing into a serious request*." (Emphasis added)

█ "Public solicitation" does not mean that the offer must be made to the whole world. In Securities and Exchange Commission v. Ralston Purina Co., 346 U.S. 119, at p. 123, 73 S.Ct. 981, at p. 983, 97 L.Ed. 1494 (1953), the court said:

"Decisions under comparable exemptions in the English Companies Act and state 'blue sky' laws, the statutory antecedents of federal securities legislation, have made one thing clear—*to be public, an offer need not be open to the whole world*." (Emphasis added)

It is considered that a sale of securities is offered to the public when several people are asked if they will not buy and are urged to buy such stock. Link, Petter & Co. v. Pollie, 241 Mich. 356, 217 N.W. 60 (Mich. Sup.Ct., 1928).

The evidence is as follows: In 1960 appellee prepared brochures to sell the stock of Tumblewood Bowling Corporation, stating that his compensation was to be a commission of 10% of total stock sold. The brochures contained the usual data as to proposed capital stock, nature of project, estimated income and amounted to a detailed prospectus. In soliciting the sale of stock to some 250 persons, appellee exhibited said brochures to such prospective purchasers of stock. Appellee was not a registered dealer or licensed salesman. Through his efforts, approximately $150,000 worth of common stock of Tumblewood Bowling Corporation was sold. On direct examination appellee testified that he approached many individuals in regard to purchasing stock in the corporation, naming them. Then he testified as follows:

"Q. Now, without question, you solicited or you asked or requested Mr. A. L. and Nathan Reynolds to purchase stock, didn't you?

"A. Yes, sir.

"Q. You showed them the brochure in interesting them?

"A. Yes, sir.

"Q. Likewise, you asked Mr. Bean?

"A. Yes, sir.

"Q. You, I believe you explained to me awhile ago, that you left him a brochure for him to study, didn't you? That was your testimony just a few minutes ago.

"A. He asked for one and I gave it to them.

"Q. Surely. You solicited or requested Mr. Hudson Guillory in the interest of selling him stock, did you not?

"A. Yes, sir.

"Q. The same goes for the two Basharas, isn't that right?

"A. Yes, sir.

"Q. You showed them the brochure in asking them to buy, didn't you?

"A. Yes, sir."

Also, Mr. Matise testified further he contacted people to sell stock that *he did not know before he contacted them.* Appellee further testified:

"Q. Did you talk to other people, Mr. Matise, in regard to purchasing stock in the corporation other than these we have mentioned?

"A. Yes, sir.

"Q. Do you know whether or not they purchased any stock in the company or not?

"A. That is the only list that I have, Mr. Sample, but I spoke to over 250 people.

"Q. All right, did you intend to sell stock to 250 people, or were you simply talking to that many so you could get the number you needed?

"A. I was talking to as many people as it took until we sold $150,000 worth of stock.

"Q. All right, did you plan to have less than thirty-five stockholders?

"A. Yes, sir, we had to have less than thirty-five."

As to the brochure, appellee testified as follows:

"Q. Now, as to the exhibit that has been marked as D-1, being the brochure which was previously identified, you showed that to any number of people, didn't you?

"A. Yes, sir.

"Q. You, as I understood your testimony this morning, that you contacted some 250 people?

"A. Yes.

"Q. That in accordance with this contacting the people, why, you showed them the booklet?

"A. Yes, sir.

"Q. You invited them to purchase the stock?

"A. It was offered to them.

"Q. And while you were talking to them, so that they would have an interest in the proposed corporation, why, you would show them the AMF figures of what the net yield was supposed to be?

"A. I showed them the Brunswick books, the complete books we had. We had two of them."

"Q. We'll move on to something else. You had an agreement, did you not, or something, setting forth as to what you were supposed to receive as your commission, isn't that right?

"A. Yes, sir.

"Q. And in exchange for the sale of the stock and perhaps these other matters that you have mentioned about, were you to receive 10% of the stock that you sold?

"A. I was supposed to receive 10% of the total amount of stock, of the $150,000.00."

Appellee's admissions of fact when testifying during the trial were not subsequently modified or explained by him. The above admissions are conclusively binding on him so as to eliminate any need for proving the above facts otherwise. Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569 (S.Ct.1940) and cases cited.

■ Although some 250 people were approached by appellee in his efforts to sell such stock, less than 35 persons did purchase stock. One who talked to some 250 people about purchasing stock in a corpo-

ration, some of whom he did not know beforehand, and testified that he was going to talk to as many people as necessary to sell $150,000 worth of stock cannot be heard to say that he did not engage in public solicitation in the sale of securities. The appellee engaged in such conduct.

■ Appellant objected to the submission of an issue inquiring as to whether or not appellee sold the stock without public solicitation because appellee Matise admitted in his testimony that he used public solicitation in selling the stock. Appellant's point of error directed thereto is sustained.

The Texas Securities Act does not define the term "advertisement", but Section 22 (A.) of the Act provides:

"It shall be unlawful and punishable with the penalties set forth in Section 29 of this Act for any person * * * to issue, distribute, or publish, within this State, any circular, advertisement, pamphlet, prospectus, program or other matter, as to any security, unless such *advertising* complies with the requirements hereinafter set forth in Section 22; * * *." (Emphasis added)

■ Clearly, the provisions of Section 22(A.) indicate that a pamphlet or brochure used to aid in the sale of securities would be advertising within the meaning of that term as used in The Securities Act. One who is engaged in selling securities is not entitled to an exemption under Section 5 (I.) of The Securities Act if he uses such a brochure to aid in the sale of such securities as appellee used and admitted that he used to aid him in selling stock. Appellant's point of error objecting to the submission of such issue is sustained.

Each and all of appellant's points of error are sustained in which it urges (a) the court erred in overruling appellant's motion for an instructed verdict, (b) the court erred in overruling appellant's motion for judgment non obstante veredicto, (c) the court erred in overruling appellant's mo-

tion to disregard the jury's finding that the sale of stock was accomplished without the use of advertisement and in refusing to enter judgment for appellant, and (d) the court erred in overruling appellant's motion to disregard the jury's finding that the sale of stock was accomplished without any form of public solicitation and in refusing to enter judgment for appellant.

Having violated such provisions of The Securities Act, appellee may not base any suit against appellant to recover a commission for the sale of stock. Art. 581–34, R.C.S.

By reason of the foregoing, appellant's other points of error are immaterial and are not passed on herein.

Judgment of the trial court is reversed and judgment rendered in favor of appellant.