**Gary DEAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41204.**

Court of Criminal Appeals of Texas.

Oct. 30, 1968.

Brown, Shuman & Harding, by Clifford
W. Brown, Lubbock, for appellant.

Richard M. Price, Dist. Atty., Abilene, William H. Davis, State Securities Bd., and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

## ON APPELLANT'S MOTION FOR RE-HEARING

ONION, Judge.

Our previous opinion is withdrawn and the following is substituted in lieu thereof.

The offense is a violation of Article 581–29.A, Vernon's Ann.Civ.St. (1964), offering securities for sale without being a registered dealer, the punishment, $2,000 fine.

The indictment contained two counts, but during the trial of the case the State elected to prosecute upon the second count, which was submitted to the jury in the court's charge.

In the second count it was charged that appellant did "unlawfully engage in the business of a dealer in securities, and was then and there a dealer in securities by selling and offering for sale securities, and did then and there sell and offer for sale to J. W. Henry for his son, Steven Ray Henry, a certain security, to wit: [an 'override' contract in VibroSeat Company whereby for $1,000 invested the purchaser would receive two cents upon each sale of a VibroSeat unit] without the said Gary Dean having first been duly registered as a dealer in securities by the Securities Commissioner of the State of Texas as is provided by law in such cases, and he, the said Gary Dean, was then and there not a duly registered dealer in securities, duly registered as such by and with the Securities Commission of the State of Texas."

Article 581–29.A, supra, reads as follows:

"Any person who shall: A. Sell, offer for sale or delivery, solicit subscriptions or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities without being a registered dealer or salesman or agent as in this Act provided shall be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine of not more than Five Thousand Dollars ($5,000) or imprisonment in the penitentiary for not more than ten (10) years, or by both such fine and imprisonment."

The undisputed facts surrounding the alleged offer for sale were primarily elicited from Mr. and Mrs. J. W. Henry, who testified for the State, and appellant and his wife, who testified for the defense. The evidence is as follows:

Mrs. Gary Dean, who was the wife of appellant at the time of trial, but who at the time of the alleged offer for sale was Mrs. Wanda Jean Lindsey, was a "double" first cousin of J. W. Henry, a poultry farmer. Wanda Jean Lindsey and J. W. Henry often consulted each other regarding investments, and she initially suggested to him the possibility of an investment in VibroSeat Company, a division of Associated Investors, of which Mr. E. L. Hughes was president. She explained to Mr. Henry the effect of an "override" contract and the plans of the company. After several discussions between the two, J. W. Henry decided to purchase such an "override" contract. Mrs. Lindsey agreed to arrange a meeting with Mr. E. L. Hughes to consummate the deal. Hughes, apparently unavailable at the time, suggested that appellant, who, it appears, held no control position with the company, but who was nevertheless a holder of an "override" contract in VibroSeat and was active in securing mechanical parts for the production of the VibroSeat unit, close the deal. (Appellant's primary occupation was a collection manager for Family Publication Service.) Such a meeting was arranged by Wanda Jean Lindsey to take place in Abilene, Texas, on March 21, 1965. At this meeting appellant disclosed the particulars of the VibroSeat Company to Mr.

and Mrs. Henry, and Mrs. Henry signed a $1,000 check, payment being made to "VibroSeat Company," and delivered it to appellant. Appellant in return signed the "override" contract as a representative of the VibroSeat Company, stating that Steven Ray Henry would receive a two cents override for each sale of a VibroSeat unit. The check was taken by Wanda Jean Lindsey, who was also present at the meeting, and delivered it to E. L. Hughes who endorsed it. It was further endorsed by a Mr. Paul D. Tullis.

Mr. and Mrs. J. W. Henry particularly testified that they had never met or talked with appellant prior to this meeting and that they already had decided to purchase the "override" contract when they first met appellant, and that appellant's representations at this meeting were not the procuring cause of the sale.

Other evidence showed that the Vibro-Seat Company was not licensed to sell securities in Texas, and that neither the "override" contract was registered as a security nor was appellant licensed as a dealer in securities with the Texas Securities Commissioner.

The State introduced four other attempts at solicitation of investments made by appellant. They were admitted in evidence solely for the purpose of showing appellant to be a dealer in securities. The gist of appellant's actions in these four instances was to make the initial contact with potential investors to determine if they would be interested in participating in newly proposed ventures. Only one of these other instances concerned the VibroSeat Company.

It is not disputed that the "override" contract is a security within the scope of the Texas Securities Act.

Appellant raises four grounds of error; they will be renumbered for the purposes of this opinion.

In his first ground of error appellant contends that "the trial court erred in failing to submit to the jury the affirmative defense raised by the evidence in this case that the defendant, Gary Dean, did not make a sale of a security to J. W. Henry for the benefit of his son, Steven Ray Henry, but that the same was made by someone other than said defendant."

The essence of appellant's complaint is two-fold: (1) that either E. L. Hughes together with Wanda Jean Lindsey made the sale of the "override" contract, or that Wanda Jean Lindsey alone made the sale, and (2) that if appellant did make a sale of an "override" contract, if was to Mrs. J. W. Henry for the benefit of her son, Steven Ray Henry, and not to Mr. J. W. Henry for the benefit of his son as alleged in the indictment.

Article 581–4.E, V.A.C.S. (1964) provides:

"The terms 'sale' or 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose of a security for value. * * * The term 'sell' means any act by which a sale is made, and the term 'sale' or 'offer for sale' shall include a subscription, an option for sale, a solicitation of sale, a solicitation of an offer to buy, an attempt to sell, or an offer to sell, directly or by an agent or salesman, * * *."

■ Under the terms of the Act it is true that Wanda Jean Lindsey and possibly E. L. Hughes were sellers of the "override" contract in question, but their status as sellers would not prohibit appellant from being a seller also. "Clearly there may be more than one. As we interpret the Act the seller may be any link in the chain of the selling process or in the words of the Act he is one who performs 'any act by which a sale is made.'" Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, at p. 708, 59 A.L.R.2d 1011 (1956); See recent case of Smith v. Smith, 424 S.W.2d 244 (Tex. Civ.App.—Houston, 1968).

■ The fact that Mrs. J. W. Henry was the ultimate purchaser of the "override"

contract for her son does not exclude the fact alleged and proved that appellant also offered for sale the "override" to J. W. Henry for the same purpose, the latter being the offense of which appellant was convicted. Appellant's first ground of error is overruled.

Appellant, in his second ground of error, complains that the evidence adduced at his trial was insufficient to show that appellant was a dealer in securities.

The term "dealer" is defined by the Texas Securities Act as follows:

Article 581-4.C, V. A. C. S. (1964):

"The term 'dealer' shall include every person or company, other than a salesman, who engages in this state, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to or orders for, or under-taking to dispose of, or to invite offers for, or rendering services as an investment adviser, or dealing in any other manner in any security or securities within this state. * * *"

■ "The Securities Act is very broad. If a person is engaged in the business and attempts to sell securities for himself or another, he comes within the Act and must meet the requirements of the law in obtaining a license." Flournoy v. Gallagher et al., 189 S.W.2d 108, at p. 111 (Tex.Civ. App.—Eastland, 1945). The fact that an accused engages in an isolated transaction involving the sale of securities does not exempt him from the sanctions of the Securities Act. See Cosner v. Hancock, 149 S.W. 2d 239, at p. 243 (Tex.Civ.App.—El Paso, 1941); Breeding v. Anderson, 152 Tex. 92, 254 S.W.2d 377, at p. 380 (1953); Gregory v. Roedenbeck, 141 Tex. 543, 174 S.W.2d 585, at p. 588 (1943). Appellant's second ground of error is overruled.

Appellant's most serious complaint is found in what we have designated his third and fourth grounds of error. Appel-

lant urges that the trial court erred in failing to submit in the charge to the jury his affirmative defense raised by the evidence that if the jury should find, or have a reasonable doubt thereof, that he was a participant in an exempt transaction pursuant to Article 581-5.I(a), V. A. C. S. (1964), they should find him not guilty. Appellant further contends that the charge submitted to the jury on the securities law constituted a comment on the weight of the evidence.

The court charged the jury on the securities law as follows:

"You are instructed that our statutes provide that it shall be unlawful for any person to sell, offer for sale or delivery, solicit subscriptions or orders for, dispose of, invite offers for, or to deal in any other manner in any security or securities without being registered with the Securities Commissioner of The State of Texas as a dealer or salesman or agent in securities."

The exemption relied upon by appellant reads as follows:

"Article 581-5. Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and in the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions.

\*    \*    \*    \*    \*    \*

"I. Provided such sale is made without any public solicitation or advertisements, (a) the sale of any security by the issuer thereof so long as the total number of securty holders of the issuer thereof does not exceed thirty-five (35) persons after taking such sale into account; * * *."

Since the exemption provided in Article 581–5.I(a), supra, is not contained within the body of the definition of the offense (Art. 581–29, supra), the State was not required to negative the exemption as one of its elements of proof. See Bridges v. State, 172 Tex.Cr.R. 508, 360 S.W.2d 531, cert. denied, 371 U.S. 821, 83 S.Ct. 38, 9 L.Ed.2d 61; See also Salazar v. State, 423 S.W.2d 297 (1968). The burden rested with appellant to raise this exemption defense; then, if raised, the burden shifted to the State to disprove such defense beyond a reasonable doubt.

Once the defensive issue is raised by the evidence, whether such evidence be produced by the State or the defense, and whether it be strong or feeble, unimpeached, or contradicted, it is reversible error for the court to fail to submit an affirmative instruction thereon if proper special requested charge or objection has been made by the defense. 31 Tex.Jur.2d, Instructions, Sec. 110, p. 660.

Appellant timely filed elaborate objections to the court's charge complaining that such charge failed to submit appellant's affirmative defense contained in Article 581–5.I(a), supra, which had been raised by the evidence, and that to submit such charge in its present form would constitute a comment on the weight of the evidence. Such objections were overruled.

From the testimony of J. C. Armstrong, a certified public accountant, it appears that investments in VibroSeat Company were in the form of "override" contracts whereby the purchaser would receive a specified amount of money from each sale of a VibroSeat unit. His testimony is uncontradicted that there were less than thirty-five holders of these "override" contracts.

Appellant's testimony is uncontroverted that no advertising was utilized in making the prosecuted offer for sale or any other sales of VibroSeat "override" contracts.

The remaining question for this Court to decide is whether the evidence adduced at the trial raised the issue that the offer for sale to J. W. Henry was made without "public solicitation." If such issue was raised, appellant was entitled to have his exemption defense affirmatively submitted to the jury.

Tumblewood Bowling Corp. v. Matise, 388 S.W.2d 479 (Tex.Civ.App.—Beaumont, 1965) was the first Texas case to construe the term "public solicitation" contained in Article 581–5.I (now, with changes, 5.I(a) ). Matise, the plaintiff was one of several persons instrumental in forming the Tumblewood Bowling Corp. He performed a number of services for it, including some in connection with the preliminary planning and construction of its bowling alley, and others in selling its stock. Matise sued to recover the commissions promised him for selling the stock, but was met with the defense that he had no securities license. He claimed that the sale was exempt under Article 581–5.I because the number of stock holders did not exceed thirty-five. It appears, however, that while Matise had the thirty-five man limit in mind, he neglected the prohibition of public solicitation. Matise testified that while he sold stock to less than thirty-five people, he approached over 250, some of whom he did not know beforehand, handing out literature and brochures in an effort to sell stock in the corporation. He further testified that he was going to talk to as many people as necessary to sell $150,000 worth of stock.

In holding these facts constituted "public solicitation" the court said:

"The term 'public solicitation' is not defined in The Texas Securities Act. The term 'solicitation' is defined in Black's Law Dictionary, 4th Ed., page 1564, as 'Asking: enticing: urgent request: *Any action which the relation of the parties justifies in construing into a serious request.*' (Emphasis added)

" 'Public solicitation' does not mean that the offer must be made to the whole

world. In Securities and Exchange Commission v. Ralston Purina Co., 346 U.S. 119, at p. 123, 73 S.Ct. 981, at p. 983, 97 L.Ed. 1494 (1935), the court said:

" 'Decisions under comparable exemptions in the English Companies Act and state "blue sky" laws, the statutory antecedents of federal securities legislation, have made one thing clear—*to be public an offer need not be open to the whole world.*' (Emphasis added)

"It is considered that a sale of securities is offered to the public when several people are asked if they will not buy and are urged to buy such stock. Link, Petter & Co. v. Pollie, 241 Mich. 356, 217 N.W. 60 (Mich.Sup.Ct.1928)."

The second Texas case to interpret the term "public solicitation" was Birchfield v. State, Tex.Cr.App., 401 S.W.2d 825 (1966). The facts demonstrating "public solicitation" were summarized by this Court as follows:

"The witness Zonker testified that she wrote letters for appellant to certain companies listed in the Houston telephone book in which appellant stated that stock in Pacific Fluoride was available at one dollar a share. The witness Simpson testified that he introduced appellant to numerous acquaintances of his in Beaumont and that appellant offered stock for sale to them and sold stock to a number of named individuals. There was the further evidence of the brochures which were typed in appellant's Houston office and given by appellant to each person he contacted relative to the sale of stock."

In the case at bar evidence showed that the appellant did not search out J. W. Henry as a potential investor, but that his interest in VibroSeat was developed by Wanda Jean Lindsey, who was Henry's "double" cousin and who often conferred with him on investments. The Henrys further testified that they had decided to purchase the "override contract" before

they ever met the appellant, and his representation at their meeting was not the procuring cause of the sale. In light of these facts and a re-examination of all facts and circumstances in evidence, we have concluded that the issue of whether the offer for sale to J. W. Henry was made "without any public solicitation" was clearly raised. Therefore, the trial court erred in refusing to respond to appellant's objections to the charge pertaining to said exemption. Such error calls for reversal, and we need not discuss appellant's ground of error #4.

Appellant's motion for re-hearing is granted, and the judgment of the trial court is reversed and the cause is remanded.