Chester B. KOAH, Appellant,

v.

The STATE of Texas, Appellee.

No. 57019.

Court of Criminal Appeals of Texas, Panel No. 3.

July 16, 1980.

Rehearing Denied Sept. 17, 1980.

**158**

Michael R. Gibson, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Douglas Gelo, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for sale of unregistered securities pursuant to Article 581–29, V.A.C.S., commonly referred to as the Blue Sky Law. Punishment was assessed at confinement for one year.

Inasmuch as appellant's first six grounds of error pertain to alleged error in the indictment, it is necessary to first set out the indictment, which states in pertinent part:

". . . on or about the 30th day of June, A.D., 1973, and before the presentment of this indictment, in the County and State aforesaid, Chester B. Koah did then and there unlawfully and intentionally engage in the business of a dealer in securities, and was then and there a dealer in securities by selling, offering for sale, soliciting subscriptions to and orders for securities, and did then and there unlawfully and intentionally sell and offer for sale to DALE AND MONICA JOHNSON and did then and there unlawfully and intentionally solicit of and from DALE AND MONICA JOHNSON a subscription to and order for a certain security, to wit:

### AGREEMENT

This agreement entered into this 30th day of June, 1973, between Dale Johnson hereinafter referred to as Investor and K–I–S Research, hereinafter referred to as Company.

In consideration of the sum of $1000⁰⁰ Investor does hereby own ¼ of 1 per cent of said Company.

1. Company agrees to proceed with the necessary research and development for the manufacturer [sic] and sale of the various items when warranted by capitalization of said Company.

2. It is understood this is a venture capital investment in the Company and not limited to a few specific items.

3. The Company agrees to continue to research and develop various new

products for the consumer and to invest and diversify within the various segment of the capital investment field.

4. Company agrees Investor will be named to the Board of Directors when ownership reaches or exceeds (2%) two percent.

5. Company agrees that a minimum of ten percent (10%) of net profit accrued in each Fiscal Year will be disbursed to owners of record.

6. It is further understood that investor agrees as follows. No sale of investors holdings in said Company shall be made without prior written notice to the Chief Executive Officer, Mr. Chester B. Koah at the Company address. The Company shall have a ninety (90) day option to purchase said holdings.

This agreement executed this <u>30th</u> day of <u>June</u>, 1973, in the City of <u>El Paso</u>, County of <u>El Paso</u>, State of <u>Texas</u> and authorized by Chester B. Koah, and/or Samantha Koah, designated officers of K–I–S Research.

<div style="margin-left:2em">

Dale Johnson
Investor
<u>Chester B. Koah</u>
Chester B. Koah
Chief Executive Officer
</div>

Samantha Koah
Witness

---

Samantha Koah
Ass't. Chief Executive Officer

and said security was issued after September 6, 1955, and was then and there not registered by notification by and with the Securities Commissioner of the State of Texas, and said security was then and there not registered by coordination by and with the Securities Commissioner of the State of Texas, and then and there no permit for the sale of said security had been granted by the Securities Commissioner of the State of Texas, all as is provided by law in such cases and the said security was not then and there a duly registered security, duly registered as such by and with the Securities Commissioner of the State of Texas;

And the Grand Jurors aforesaid, upon their oaths aforesaid in said County and State, at said Term, do further present to said Court that Chester B. Koah on or about the 30th day of June, A.D., 1973, and before the presentment of this indictment, in the County and State aforesaid, did then and there unlawfully and intentionally engage in the business of a dealer in securities, and was then and there a dealer in securities by selling, offering for sale, soliciting subscriptions to and orders for securities and did then and there unlawfully and intentionally sell and offer for sale to DALE AND MONICA JOHNSON and did then and there unlawfully and intentionally solicit of and from DALE AND MONICA JOHNSON a subscription to and order for a certain security, to wit:

[Agreement]

without the said Chester B. Koah having first been duly registered as a dealer in securities by the Securities Commissioner of the State of Texas as is provided by law in such cases, and he, the said Chester B. Koah was then and there not a duly registered dealer in securities, duly registered as such by and with the Securities Commissioner of the State of Texas;

and the Grand Jurors aforesaid, upon their oaths aforesaid in said County and State, at said term, do further present to said Court that Chester B. Koah on or about the 30th day of June, A.D., 1973, and anterior to the presentment of this indictment, in the County and State aforesaid, did unlawfully and fraudulently sell and offer for sale to DALE AND MONICA JOHNSON a security, to wit:

[Same Agreement]

and the said Chester B. Koah did then and there commit fraud upon the said DALE AND MONICA JOHNSON by willfully, fraudulently and knowingly representing that:

(1) K.I.S. Research had the necessary toolmaking capability and complete manufacturing and package facility to begin full–scale production; and

(2) Returns on the investment of about 20% would be received in about 18 months.

and the said Chester B. Koah then and there knew that said representations were false and the said Chester B. Koah made said false representations for the purpose of inducing the said DALE AND MONICA JOHNSON to purchase said security and the said false representations were misrepresentations of material fact; against the peace and dignity of the State."

■ In grounds of error two and four, appellant claims that the indictment is defective for failure to allege a culpable mental state. The indictment states that appellant intentionally sold unregistered securities and appellant maintains that the proper culpable mental state should be "knowingly." It is the appellant's position that the intentional selling of an unregistered security is not an offense unless the actor had *knowledge* that the security was unregistered. Article 581–29(A), (C), supra, does not prescribe a culpable mental state, nor does it plainly dispense with any mental element. See V.T.C.A. Penal Code, Sec. 6.02, Subsections (c), (d) and (e) of Section 6.02 provide:

"(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility.

(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

(1) intentional;

(2) knowing;

(3) reckless;

(4) criminal negligence.

(e) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged."

This indictment, which alleges the highest culpable mental state, is sufficient to charge a culpable mental state.[1] Compare with indictment in *Shappley v. State*, 520 S.W.2d 766 (Tex.Cr.App.1974). Both grounds of error are overruled.

In ground of error number one, appellant contends that the trial court erred in refusing to grant his motion to quash the indictment on the basis that the State alleged three offenses in one indictment, in violation of Article 21.24, Vernon's Ann.C. C.P. The penal provisions of the Blue Sky Law are found in Article 581–29. This Article provides, in part:

"Any person who shall:

A. Sell, offer for sale or delivery, solicit subscriptions or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities without being a registered dealer or salesman or agent as in this Act provided shall be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine of not more than Five Thousand Dollars ($5,000) or imprisonment in the penitentiary for not more than ten (10) years, or by both such fine and imprisonment.

B. Sell, offer for sale or delivery, solicit subscriptions to and orders for, dispose of, invite orders for, or who shall deal in any other manner in any security or securities issued after September 6, 1955, unless said security or securities have been registered or granted a permit as provided in Section 7 of this Act, shall be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine of not more than Five Thousand Dollars ($5,000) or imprisonment in the penitentiary for not more than ten (10) years, or by both such fine and imprisonment.

---

1. As the Practice Commentary to Sec. 6.03, V.T.C.A. Penal Code, points out, "the distinction between knowing and intentional is narrow . . . there is little difference between one who wills a particular result and one who is willing for it to occur . . . . The formulated distinction between intentional and knowing, as to results, is thus between desiring the result and being reasonably certain that it will occur."

C. Engage in any fraud or fraudulent practice in the sale, offering for sale or delivery of, invitation of offers, or dealing in any other manner in any security or securities shall be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine of not more than Five Thousand Dollars ($5,000) or imprisonment in the penitentiary for not more than ten (10) years, or by both such fine and imprisonment."

This indictment alleges three offenses: (1) selling unregistered securities, (2) dealing in securities without being a registered dealer and (3) fraudulently selling and offering to sell a security. These alleged offenses all arose out of a single transaction.

■■■ The State may allege, in a single indictment, two or more offenses in separate counts, if the offenses arise out of the same incident, act, or transaction. *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978); *Vannerson v. State*, 408 S.W.2d 228 (Tex.Cr. App.1966). See *Steambarge v. State*, 440 S.W.2d 68 (Tex.Cr.App.1969); *Rose v. State*, 427 S.W.2d 609 (Tex.Cr.App.1968). In this case, the offenses alleged arose from a single transaction. The trial court did not err in refusing to grant the motion to quash. The ground of error is overruled.

■■ In grounds of error five and six, appellant urges that the trial court erred in denying appellant's motion to compel the State to make an election of counts. The record reflects that the fraud count of the indictment was dropped after the State rested its case. The other two counts were submitted to the jury, which was authorized to return a guilty verdict on one count only. In *Crocker v. State*, supra, the court held that where an indictment alleges two or more offenses arising out of the same transaction, the State may elect during the trial which count it will rely upon to seek a conviction or it may refuse to make an election. The trial court, instead of compelling an election, may submit each of the counts to the jury with the instruction that a conviction could be had on only one of them. See *Hughes v. State*, 455 S.W.2d 303 (Tex.Cr.App.1970); *Vannerson v. State*, supra. The grounds of error are overruled.

■■■ In appellant's third ground of error, he claims that the trial court erred in denying his motion to quash on the grounds that Article 581–5(I), V.T.C.A., is vague and indefinite because it fails to define the term "public solicitation." Appellant further contends that no person of reasonable or average mental ability could understand its provisions. Article 581–5, Exempt Transactions, enumerates certain instances where the provisions of the Securities Act do not apply. Article 581–5(I) provides, in part,

"Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

\* \* \* \* \* \*

I. Provided such sale is made without any public solicitation or advertisements, (a) the sale of any security by the issuer thereof so long as the total number of security holders of the issuer thereof does not exceed thirty–five (35) persons after taking such sale into account; (b) the sale of shares of stock pursuant to the grant of any employees' restricted stock option as defined in the Internal Revenue Laws of the United States; or (c) the sale by an issuer of its securities during the period of twelve (12) months ending with the date of the sale in question to not more than fifteen (15) persons (excluding, in determining such fifteen (15) persons, purchasers of securities in transactions exempt under other provisions of this Section 5, purchasers of securities exempt under Section 6 hereof and purchasers of securities which are part of an offering registered under Section 7 hereof), provided such persons purchased such securities for their own account and not for distribution."

The State is not required to negate any exemptions from restrictions on sale of securities as one of its elements of proof, Article 581–37, V.A.C.S. *Dempsey–Tegeler & Co. v. Flowers*, 465 S.W.2d 208 (Tex.Civ. App.1971), reversed on other grounds, 472 S.W.2d 112 (Tex.1971); *Dean v. State*, 433 S.W.2d 173 (Tex.Cr.App.1968). Therefore, it is not necessary to construe Article 581–5 to allege an offense under Article 581–29. Furthermore, a statute will not be struck down as "vague and indefinite" merely because its words or phrases are not specially defined. *Morgan v. State*, 557 S.W.2d 512 (Tex.Cr.App.1977). The ground of error is overruled.

In grounds of error seven and eight appellant contends that the trial court erred in refusing appellant's requested instructions on the meaning of "public solicitation," in connection with the exemption provided in Article 481–5(I), supra. The appellant requested the following instruction,

"[p]ublic solicitation or advertisement means that the offer is made by the issuer of the security in question to members of the general public with whom the issuer has had no prior contact."

Appellant also requested that the Court instruct the jury to give the terms "public," "solicitation," and "advertisement" their common, customary, and every-day meaning such as would be understood by a reasonable member of the general public.

The instruction given by the Court is as follows:

"To be made with public solicitation or advertisement, it is not required that a sale of a security be made to the whole world. A sale is made with public solicitation or advertisement when several persons are urged to buy a security and the persons solicited do not have either the experience or a relationship to the issuer of the security such as that of a close personal friend, a close relative, or a close business associate, that would enable them reasonably to judge for themselves the good faith, the reliability, the ability, the competence, and the business experience of the issuer, and that would further enable them to obtain a fair and factual disclosure of the plan of business, the history, and the financial statements of the issuer.

If the sale of a security is made without public solicitation or advertisement, then the same is exempt from the registration provisions of the law.

Therefore, unless you believe from the evidence beyond a reasonable doubt that the sale, or offer to sell, to Dale and Monica Johnson, if any, was made with public solicitation or advertisement, you will find the defendant not guilty (Verdict Form A)."

In *Tumbleweed Bowling Corp. v. Matise*, 388 S.W.2d 479 (Tex.Civ.App.1965), the Texas Court of Civil Appeals construed the term "public solicitation." The court stated:

"The term 'public solicitation' is not defined in The Texas Securities Act. The term 'solicitation' is defined in Black's Law Dictionary, 4th Ed., . . ., as 'Asking: Enticing: urgent request: *Any action which the relation of the parties justifies in construing into a serious request.*' [emphasis original] 'Public solicitation' does not mean that the offer must be made to the whole world . . . It is considered that a sale of securities is offered to the public when several people are asked if they will not buy and are urged to buy such stock."

See *Dean v. State*, 433 S.W.2d 173 (Tex.Cr. App.1968). See also *Birchfield v. State*, 401 S.W.2d 825 (Tex.Cr.App.1966). The definition in the Court's charge is substantially the same as the meaning given the term when construed by other Courts. Furthermore, the instruction requested by the appellant inaccurately defined the term. The grounds of error are overruled.

In ground of error number nine, appellant contends that it was error to include a definition of the term "advertisement" in the charge to the jury because there was no evidence of any advertisement in the case. We find no merit to this contention. The appellant was charged with violating the penal provisions of the Securities Act. Ar-

ticle 581–5, supra, which exempts certain transactions from the provisions of the Act, provides in Section I that where less than 35 solicitations are made by the issuer, the sale is exempt from the registration provisions of the Act unless it is made with public solicitation or advertisement. The appellant raised the issue of exemption, and was entitled to an instruction on that issue. The appellant was not entitled to the exemption if the sale was made with public solicitation or advertisement. The ground of error is overruled.

█ Appellant next contends that the trial court erred in overruling his motion to suppress evidence contained in a letter written by appellant to Hugh Wright from the State Securities Board. We find no merit to this contention. The letter was written to Wright in August of 1973, in response to Wright's inquiries concerning appellant's company and possible violations of the Securities Act. Wright requested that appellant furnish him with information about the company and its investors. The appellant sent Wright the names and addresses of all the persons who had invested in his company. Appellant contends that this information was wrongfully obtained because the investigation had focused on appellant and he had not been given his *Miranda* warnings. This information was in no way obtained as the result of a custodial interrogation. See *Ancira v. State*, 516 S.W.2d 924 (Tex.Cr.App.1974). The information was not obtained illegally. See *Beckwith v. U. S.*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). Also, Wright testified at the pretrial hearing on the Motion to Suppress that he had obtained the names of all the investors from independent sources. The ground of error is overruled.

█ In ground of error eleven, appellant maintains that he was denied a speedy trial because of undue delay by the State in presenting his case to the grand jury. The right to a speedy trial does not arise until after prosecution is instituted against the accused and any delay occurring between commission of the offense and commencement of prosecution is controlled exclusively by the applicable statute of limitations. *Harlow v. U. S.*, 301 F.2d 361 (5th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56. See *Easley v. State*, 564 S.W.2d 742 (Tex.Cr.App.1978). The appellant was indicted on June 24, 1976, for an offense which allegedly occurred on June 30, 1973. The appellant was indicted within the time period prescribed by the Statute of Limitations. See Article 12.01, Vernon's Ann.C.C.P. The ground of error is overruled.

█ In ground of error twelve, appellant contends that the trial court erred when it refused to grant appellant's motion for an instructed verdict of not guilty to the fraud count of the indictment. When the State rested its case, the appellant made his motion for an instructed verdict. The trial court did not grant appellant's motion, but instead dismissed the fraud count of the indictment. Appellant claims that he was entitled to an instructed verdict of not guilty in order to prevent him from being retried for the same crime. The three offenses alleged in the indictment arose out of the same transaction; appellant was convicted of one offense arising from this transaction. Therefore, jeopardy has attached. The ground of error is overruled.

█ Finally, appellant contends that the evidence is insufficient in that the State "failed to show a public solicitation or advertisement which brings the case within the exception to the registration requirement in Article 581–5, Subsection (I)." The burden of proof is on the appellant to prove an exception to the Securities Act. Article 581–37, supra. See *Dempsey–Tegeler & Co. v. Flowers*, supra; *Dean v. State*, supra. The ground of error is overruled.

The judgment is affirmed.