COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-210-CR

 

 

JOHN
 KYLE LAROQUE                                                                      APPELLANT

 

V.

 

THE
 STATE OF TEXAS                                                                             
 
 STATE

 

------------

 

FROM COUNTY
 CRIMINAL COURT NO. 9 OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          Appellant John
Kyle LaRoque appeals his conviction for driving while intoxicated (DWI).[2]  In three issues, he contends that the trial
court erred by providing the jury with a written definition of “operating” and
by denying his requests for jury charge instructions regarding reasonable
suspicion and probable cause.  We affirm.








Background Facts

 

          Laura Davis is a bartender
at the Mule Pub in Fort Worth.  Late one
night, Davis was standing on the patio of the bar when she saw appellant’s
black BMW drive very fast down a narrow street next to the bar, make a U-turn, and
then park in a lot across the street from the bar.[3]  The BMW “bounc[ed] back and forth across the
street” and came within feet of hitting parked cars.  For about twenty minutes, appellant stayed in
the car with its motor running and its lights on.  Davis continued to watch the car and eventually
called 911 because she was concerned that appellant was intoxicated and would
try to enter her bar. She waited until officers arrived to make sure that
they approached the right car.[4]

          Fort Worth Police Department Officer
Brian Johnson received a dispatch call and went to the scene.[5]  When he arrived, he saw the BMW, which was still
running with its lights on.  He
approached the car and saw appellant sitting in the driver’s seat with his head
down “as if he were asleep.”  Officer
Johnson also noticed that the gearshift was still “in drive.”

          Officer Johnson knocked on the car’s
window several times.  When appellant
finally responded, he pulled forward until the car’s front tires touched a curb.  Appellant stopped the car and then rolled
down his window. After Officer Johnson asked appellant to get out of the car,
Officer Johnson noticed that appellant smelled like alcohol, had loud and slurred
speech, and was staggering and unsteady. 
Also, appellant’s eyes were bloodshot and watery. Based on his
observations, Officer Johnson, who is certified to perform field sobriety
testing, turned on his dashboard camera and conducted three standardized tests.
 Appellant failed all three tests, and
Officer Johnson determined that appellant had lost the normal use of his mental
and physical faculties.[6]  Officer Johnson arrested appellant for
“suspicion of DWI” and took him to jail.

          At the jail, Fort Worth Police
Department Officer Rene Frias met with  appellant in an intoxilyzer room and read a
statutory warning to him.  Officer Frias
asked appellant for a breath specimen, which appellant refused.  Officer Frias then repeated the walk-and-turn
test, which appellant failed, and the one-leg-stand test, which he passed.[7]

          The State charged appellant with DWI.  Appellant pled not guilty.  The jury found him guilty, and the trial
court sentenced him to ninety days’ confinement but suspended the sentence for
two years and placed him on probation.  Appellant
filed his notice of appeal.

Supplemental
Jury Instruction

          In his first issue, appellant contends
that the trial court erred by providing a written definition of “operating” to
the jury upon the jury’s request after its deliberation of his guilt had
begun.  The penal code provides that a
person commits DWI when the person “is intoxicated while operating a motor
vehicle in a public place.”  Tex. Penal
Code Ann. § 49.04(a).  But the penal code
does not define “operating.”  See id.; Denton v. State, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995); Dornbusch
v. State, 262 S.W.3d 432,
436 (Tex. App.—Fort Worth 2008, no pet.) (explaining that courts have construed
“operating” “very broadly”).

          The trial court did not define
“operating” in its original charge to the jury. After the jury had been
deliberating awhile, its foreman sent a note to the trial court asking whether operation
of a motor vehicle has a legal definition. 
The foreman then sent another note to the court stating,

          It appears we are making
no headway.  Members of the jury on both
sides have stated that they will not change their vote.  The issue is whether [appellant] was
“operating a motor vehicle” or not. 
Without a legal definition[,] there are opinions that he was and he was
not.  Still split 3-3.[[8]]

In
response to the notes, the trial court proposed to the parties that it would
give the jury the following instruction:

With respect to your note concerning “operating a motor vehicle[,]” you
are instructed as follows.  There is no
statutory definition of the term “operate.” 
To find operation of a motor vehicle, the totality of the circumstances
must demonstrate that the defendant took action to affect the functioning of
his vehicle that would enable the vehicle’s use.  A person may be said to operate a motor
vehicle if he exerts personal effort upon the motor vehicle in a manner that
shows intentional use of the vehicle for its intended purpose.

After appellant’s
counsel asked the trial court a question about the instruction, she ultimately told
the court that she did not object to it, and the court gave the instruction to
the jury.  Approximately an hour later,
the jury found appellant guilty.

          Appellant contends on appeal that the
trial court’s instruction was improper because (1) “operating” does not have a
peculiar legal meaning and the term should have been left to the jury’s
interpretation of the term’s plain, ordinary meaning, and (2) the instruction
was a comment on the weight of the evidence. The State contends that the trial
court gave the jury a correct, necessary instruction.

          “When the trial judge responds
substantively to a jury question during deliberations, that communication
essentially amounts to an additional or supplemental jury instruction. . .
.  Therefore, in determining whether the
subject matter of the communication was proper, we look to the rules governing
instructions.”  Daniell v. State, 848
S.W.2d 145, 147 (Tex. Crim. App. 1993) (citations omitted); see Tex. Code Crim. Proc. Ann. art.
36.16 (Vernon 2006) (stating that after the parties finish their closing
arguments, a “further charge” may be given to a jury upon the jury’s request); Villarreal v. State, 205 S.W.3d 103, 106
(Tex. App.—Texarkana 2006, pet. dism’d); Rogers
v. State, 38 S.W.3d 725, 729 (Tex. App.—Texarkana 2001, pet. ref’d).  Appellate review of error in a jury charge involves a two-step
process.  Abdnor v. State, 871
S.W.2d 726, 731 (Tex. Crim. App. 1994); see also Sakil v. State, 287
S.W.3d 23, 25–26 (Tex. Crim. App. 2009). 
Initially, we must determine whether error occurred.  If it did, we must then evaluate whether
sufficient harm resulted from the error to require reversal.  Abdnor, 871 S.W.2d at 731–32.

          A trial court has broad
discretion in submitting proper definitions and explanatory phrases to the
jury.  Roise v. State, 7 S.W.3d 225, 242 (Tex. App.—Austin 1999, pet.
ref’d), cert. denied, 531 U.S. 895
(2000); Macias v. State, 959 S.W.2d
332, 336 (Tex. App.—Houston [14th Dist.] 1997, pet. ref’d); see also Tex. Code Crim. Proc. Ann. art.
36.14 (Vernon 2007) (explaining that a trial court “shall . . . deliver to the
jury . . . a written charge distinctly setting forth the law applicable to the
case”).  “[T]erms not legislatively
defined are typically to be understood as ordinary usage allows, and jurors may
thus give them any meaning which is acceptable in common parlance.”  Medford v. State, 13 S.W.3d
769, 771–72 (Tex. Crim. App. 2000); see
Lee v. State, 866 S.W.2d 298, 301 (Tex. App.—Fort Worth 1993, pet ref’d)
(“When a defendant is prosecuted for violation of a statute, it is not error
for the court to refuse to define a word used in the statute when the word is
used in its ordinary sense, and is easily comprehended by everyone.”).  However, when a term is not statutorily
defined but has an “established legal meaning, or . . . a peculiar and
appropriate meaning in the law,” then “[j]ustice would be better served . . .
if jurors were provided a precise, uniform definition to guide their
determination.”   Medford, 13 S.W.3d at 772; see also
Tex. Gov’t Code Ann. § 311.011(b) (Vernon 2005) (“Words and phrases that
have acquired a technical or particular meaning, whether by legislative
definition or otherwise, shall be construed accordingly.”).  

          We have held that “operating” does not
have an “established” or “peculiar” meaning but rather has a plain meaning that
jurors are free to construe.  Yocom v.
State, No. 02-03-00181-CR,
2004 WL 742888, at *11 (Tex. App.—Fort Worth Apr. 8, 2004) (not designated for
publication), pet. ref’d, 149 S.W.3d
159 (Tex. Crim. App. 2004).  Thus, trial
courts are not required to define “operating.” 
Id.; see Brown v. State, 773 S.W.2d 65, 67–68 (Tex. App.—Fort Worth 1989,
pet. ref’d).  However, merely because a trial court is
not required to give an instruction regarding a term does not mean that the
court errs by doing so.  See Koah v. State, 604 S.W.2d 156, 162
(Tex. Crim. App. [Panel Op.] 1980) (indicating that a definition given by a
trial court was proper, although it was not taken from a statute, because the
definition was “substantially the same as the meaning given the term when
construed by other Courts”); Kimbro v.
State, 157 Tex. Crim. 438, 440, 249 S.W.2d 919, 920 (1952); Haynes v. State, 150 Tex. Crim. 337,
339–40, 200 S.W.2d 824, 825–26 (1947); Lockhart
v. State, 108 Tex. Crim. 597, 599, 1 S.W.2d 894, 895 (1927) (“In our
opinion it is not necessary to give any definition of the terms used in the
statute, but, one having been attempted, we think it not erroneous.”).

          The trial court’s definition of “operating
a motor vehicle” tracks the definition that has been routinely adopted by
courts in this state.[9]  See
Denton, 911 S.W.2d at 390; Dornbusch,
262 S.W.3d at 436; Yocom, 2004 WL
742888, at *2; Hearne v. State, 80
S.W.3d 677, 679 (Tex. App.—Houston [1st Dist.] 2002, no pet.); Barton v. State, 882 S.W.2d 456, 459
(Tex. App.—Dallas 1994, no pet.).  We
have not found any authority holding that, in a circumstance such as the one in
this case, a trial court errs by merely giving the jury a neutral, legally correct
definition of a term that is included in a statute (but not defined by the
statute) without giving any indication to the jury about how it should
factually apply that definition.  It is
clear that the jury needed a definition of “operating a motor vehicle” to come
to its decision.  Thus, we hold that even
though the trial court was not obligated to give a definition of “operating a
motor vehicle,” it did not exceed its “broad discretion” by providing the
correct definition.  See Roise, 7 S.W.3d at 242.

          Appellant contends that even if the
trial court gave the jury the correct definition of “operating a motor
vehicle,” the definition, given while the jury was deliberating, was an
improper comment on the weight of evidence. 
Trial courts should not opine or comment about the weight of
evidence.  See Tex. Code Crim. Proc.
Ann. art. 36.14, art. 38.05 (Vernon 1979); Brown
v. State, 122 S.W.3d 794, 798, 801 (Tex. Crim. App. 2003) (explaining that
a trial court’s comment on the weight of evidence “reduces the State’s burden
of proving guilt beyond a reasonable doubt” and stating that an instruction may
be an impermissible comment on evidence when it is “unnecessary and fails to
clarify the law for the jury”), cert.
denied, 541 U.S. 938 (2004); Hess v.
State, 224 S.W.3d 511, 514 (Tex. App.—Fort Worth 2007, pet. ref’d) (noting
that jurors are “prone to seize with alacrity upon any conduct or language of
the trial judge which they may interpret as shedding light upon his view of the
weight of the evidence”) (quoting Lagrone
v. State, 84 Tex. Crim. 609, 615, 209 S.W. 411, 415 (1919)).  “A trial court improperly comments on the
weight of the evidence if it makes a statement that implies approval of the
State’s argument, that indicates any disbelief in the defense’s position, or
that diminishes the credibility of the defense’s approach to its case.”  Hoang
v. State, 997 S.W.2d 678, 681 (Tex. App.—Texarkana 1999, no pet.)
(footnotes and citations omitted).

          To argue that the trial
court’s definition of “operating a motor vehicle” commented on the weight of
evidence, appellant relies on the court of criminal appeals’s decision in Watts v. State.  99 S.W.3d 604 (Tex. Crim. App. 2003).  In Watts,
the trial court took judicial notice of a previous judicial decision and then specifically
advised the jury about the connection between the law from that decision to a
disputed fact in the case.  Id. at 606–13.  The court of criminal appeals held that the
trial court’s act was improper because the court addressed “the jury on the
specific application of law to facts in a different judicial decision,
immediately before the parties rested and before she read the charge to the
jury.”  Id. at 613.

          Unlike in Watts, the trial court in this case did
not link its neutral definition to a particular factual circumstance or imply
whether the jury could find that appellant had operated the BMW based on the
definition that the court gave.  Also,
the definition given by the trial court, while giving a neutral explanation of
the law, did not “single[] out a particular piece of evidence,” which might
have made it an impermissible comment on the evidence.  See Bartlett
v. State, 270 S.W.3d 147, 151–52 (Tex. Crim. App. 2008).  Finally, the definition did not comment on
the evidence by improperly assuming the truth of a controverted issue.  See Whaley
v. State, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986).

          Thus, we hold that the trial court’s
providing a supplemental instruction that correctly defined “operating a motor
vehicle” in response to the jury’s notes was proper and did not comprise a
comment on the weight of the evidence.  See Chance v. State, 292 S.W.3d
138, 141–42 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d) (holding that a
trial court appropriately responded to a jury’s question during its
deliberation to clarify a question of law); see
also Lucio v. State, No. 02-08-00179-CR, 2010 WL 1730865, at *8 (Tex.
App.—Fort Worth Apr. 29, 2010, pet. filed) (mem. op., not designated for
publication) (holding that a trial court did not err by responding to a jury’s
question about whether the law prohibits a family member from speaking on a
defendant’s behalf during a sentencing phase). 
We overrule appellant’s first issue.

Article
38.23 Instructions

          In his second and third issues,
appellant contends that the trial court erred by refusing his request to
include instructions about reasonable suspicion and probable cause in the jury
charge under article 38.23 of the code of criminal procedure.  See Tex. Code Crim. Proc. Ann. art.
38.23 (Vernon 2005).  After the jury
heard all of the evidence and adjourned, appellant’s counsel said,

I would like to
request a 38.23 charge in the jury charge, Your Honor, based on reasonable
suspicion.  I have an eyewitness who
never identified the defendant, [and] an officer who never saw him driving.

 

          I would also like to ask for a 38.23
jury charge on probable cause in that the officer said he made the
determination to arrest [appellant] based on a .08 or higher breath alcohol
content from the [horizontal-gaze-nystagmus test] alone.

 

Article
38.23(a) provides,

          (a)
No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.

 

          In
any case where the legal evidence raises an issue hereunder, the jury shall be instructed
that if it believes, or has a reasonable doubt, that the evidence was obtained
in violation of the provisions of this Article, then and in such event, the
jury shall disregard any such evidence so obtained.

 

Tex. Code
Crim. Proc. Ann. art. 38.23(a).  The
court of criminal appeals has explained that under article 38.23, juries may
only resolve disputed facts; juries may not 

be expected to decide whether the totality
of certain facts do or do not constitute “reasonable suspicion” under the
law.  That would require a lengthy course
on Fourth Amendment law.  Even many
experienced lawyers and judges disagree on what constitutes “reasonable
suspicion” or “probable cause” in a given situation.  It is the trial judge who decides what
quality and quantum of facts are necessary to establish “reasonable suspicion.”
 Only
if one or more of those necessary facts are disputed does the judge ask the
jury to decide whether the officer’s belief in those facts was reasonable.

 

                   . . . .

 

          .
. .  What appellant wanted was a jury
instruction on whether the totality of facts that Officer Lily listed
constituted “reasonable suspicion” under the Fourth Amendment.  Appellant’s proposed instruction focused only
on the law.  It did not set out any specific
historical fact (e.g., face trembling, hands shaking, fumbling for wallet,
etc.) that the jury was to focus upon . . . .

 

          .
. . .

 

          But
the jury cannot “wrestle with” the legal determination of whether certain facts
do or do not constitute “reasonable suspicion.”

                   

Madden v.
State, 242 S.W.3d 504, 511–13 (Tex. Crim. App. 2007) (emphasis added) (footnote
omitted); see Garza v. State, 126 S.W.3d 79, 86–88 (Tex. Crim. App. 2004) (holding
similarly); White v. State, 201 S.W.3d 233, 249 (Tex. App.—Fort Worth
2006, pet. ref’d) (“Because a jury charge must be submitted only if a factual
dispute exists as to how the evidence was obtained, we hold that the trial
court did not err in refusing to include the requested instruction.”).  Thus, the defendant must establish three
requirements to be entitled to an article 38.23 instruction:  (1) the evidence heard by the jury must raise
an issue of fact, (2) the evidence on that fact must be affirmatively
contested, and (3) the contested factual issue must be material to the
lawfulness of the challenged conduct in obtaining the evidence.  Madden, 242 S.W.3d at 510–11 (explaining further that the “disputed
fact must be an essential one in deciding the lawfulness of the challenged
conduct”); see Oursbourn v. State,
259 S.W.3d 159, 177 (Tex. Crim. App. 2008); see
also Merriweather v. State, 501 S.W.2d 887, 891 (Tex. Crim. App. 1973)
(holding that when the specific facts used by the court to determine the
existence of probable cause were uncontested, the defendant was not entitled to
a jury instruction concerning other facts—which were contested—that did not
defeat the finding of probable cause).

          Appellant’s second issue complains
about “insufficiency of the State’s proof” showing the officer’s reasonable
suspicion to detain him; his third issue concerns “insufficiency of the State’s
proof” for Officer Johnson’s probable cause to arrest him.  Neither of these issues and neither of the
requested instructions that are quoted above reveals any specific disputed
facts that arise from the witnesses’ testimony. 
Instead, appellant’s requested instructions merely would have
impermissibly asked the jury to determine whether the totality of undisputed facts comprised
reasonable suspicion or probable cause.  See Madden, 242 S.W.3d at 512.  In other words, appellant’s requested
instructions did not regard disputed facts but rather allegedly inadequate
facts.  Appellant’s arguments, which
highlight Davis’s inability to identify appellant and Officer Johnson’s
testimony that he believed appellant to be intoxicated based only on the
horizontal-gaze-nystagmus test, maintain his focus on allegedly inadequate
facts.

          Because appellant has not shown that
his requested instructions were based on disputed facts connected to his
detention or arrest, because appellant has not articulated on appeal any
disputed facts that should have formed the justification for a charge under
article 38.23, and because we conclude upon our review of the record that it
does not demonstrate the existence of such disputed facts that are material and
essential to the reasonable suspicion or probable cause issues, we hold that
appellant was not entitled to an article 38.23 instruction.[10]  See
Romo v. State, Nos. 02-09-00153-CR, 02-09-00154-CR, 02-09-00155-CR, 2010 WL
1427272, at *6–7 (Tex. App.—Fort Worth Apr. 8, 2010, pet. filed).

          In another part of his third issue,
appellant contends that Officer Johnson improperly testified that appellant’s
performance on the horizontal-gaze-nystagmus test signaled that he had a blood
alcohol concentration of greater than .08. 
See Emerson v. State, 880
S.W.2d 759, 769 (Tex. Crim. App.) (“A witness may not use the [horizontal-gaze-nystagmus
test] evidence to quantify the defendant’s [blood alcohol concentration].”), cert. denied, 513 U.S. 931 (1994).  However, appellant elicited this testimony
during cross-examination and did not object to the testimony.  Therefore, to the extent that appellant
relies on this argument as an independent basis for alleging error, we hold that
he forfeited his complaint.  See Tex. R. App. P. 33.1(a); Tex. R.
Evid. 103(a); Mai v. State, 189
S.W.3d 316, 323 (Tex. App.—Fort Worth 2006, pet. ref’d).  

          For all of these reasons, we overrule appellant’s
second and third issues.  

Conclusion

          Having overruled all of appellant’s
issues, we affirm the trial court’s judgment.

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 19, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. § 49.04(a) (Vernon
2003).





[3]Davis
could not say exactly how fast appellant was driving, but she affirmed on
cross-examination that he was driving abnormally fast.





[4]Davis
did not get close enough to the car to see appellant inside, and she therefore
could not identify him in court or testify with certainty that he was the
person in the BMW that she saw.  However,
Davis affirmed that the BMW was parked in a well-lit area where she could
easily see that officers approached the same BMW that had been driving
erratically.  She said, “[T]here was a
space on either side of him. . . .  It
wasn’t [a] jammed parking lot at that point.”





[5]Officer
Johnson’s sergeant spoke with Davis about what she had seen.





[6]According
to Officer Johnson, appellant showed all six clues for intoxication on the
horizontal-gaze-nystagmus test, two of eight clues on the walk-and-turn test,
and three of four clues on the one-leg-stand test.





[7]Officer
Frias repeated these tests so that they could be performed in a controlled
environment without wind or traffic distractions.





[8]For
ease of readability, we have changed the style of the foreman’s note from all
capital letters to the structure of a regular sentence.





[9]Appellant
does not argue that the trial court’s definition of “operating a motor vehicle”
is incorrect; he argues that the definition should not have been given.





[10]Appellant
disagreed with Officer Johnson’s ultimate conclusion that appellant had lost the
normal use of his mental faculties because Officer Johnson conceded that he did
not specifically know what “normal use” was as applied to appellant.  But appellant did not produce evidence to
create a conflict, among other undisputed facts, about (1) his speeding and
driving erratically on a street before pulling into a parking lot, keeping his
engine running with his car still in the “drive” gearshift position and with
its lights on, and apparently sleeping for over twenty minutes; (2) his slow
response when Officer Johnson knocked on his window; (3) his odor of alcohol,
watery eyes, and loud slurred speech; or (4) his failures on the standardized
field sobriety tests that officers administered at the scene and at the jail.