William Robert COOK, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–01203–CR.

Court of Appeals of Texas, Dallas.

Dec. 20, 1991.

Fred L. Tinsley, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before STEWART, LAGARDE, and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

William Robert Cook was convicted of violation of the State Securities Act by committing fraud in the sale of a security. A jury found him guilty of the offense, and the court assessed punishment at confinement for twenty years and a $10,000 fine. Cook challenges his conviction in ten points of error. He contends the evidence is insufficient to support the conviction, and the trial court erred in overruling his motion to quash the indictment and his objections to the jury charge; in relying on the enhancement paragraph for sentencing purposes; and in cumulating this sentence with the sentence in a federal case against him. We affirm the judgment of the trial court.

### FACTS

Cook owned a mining company, Oreo Mines, Inc., (Oreo) which purchased gold ore from another company, Chemex, and sold interests in the ore to outside investors. A third company, Orex, Inc., mined the ore. Oreo provided potential investors with a sales brochure introducing Oreo and Orex and their management teams, describing the process used to mine the ore, and explaining the particulars of the investment venture. The brochure included a map of the area to be mined, an assay report, a gold ore purchase agreement with Oreo, and a mining agreement with Orex. Also included was a warranty that the ore purchased contained "a sufficient quantity of recoverable gold to reasonably justify the BUYER'S purchase." The trial court instructed the jury that an investment contract is a security within the meaning of Texas Securities laws.

Oreo sold contracts to over 400 investors, raising between $4.5 and $5 million. Chemex received approximately fifty percent of the proceeds based on its contract to provide gold ore for Oreo. Orex received some amount which was not specifically determined. Cook received over $200,000. The jury found Cook guilty of paragraph two of the five paragraph indictment, finding that he committed fraud in the sale of a security by intentionally failing to disclose to the investor that he had a prior federal securities conviction.

### THE INDICTMENT

■ In point of error one, Cook alleges the trial court erred in overruling his motion to quash the indictment. He contends the indictment did not set forth facts sufficient to constitute an offense. Cook claims it was necessary that the State allege and prove that he "knowingly failed to disclose a material fact that under [the] circumstances should have been made in order to prevent another statement from being misleading." As this allegation was not included, he contends, the indictment is defective in that it omits an element of the offense.

This argument is based on the erroneous assumption that Cook was indicted for a violation of section C(3) of article 581–29, the Texas Securities Act. Cook, however, was indicted under section C(1), which provides as follows:

C. In connection with the sale, offering for sale or delivery of, the purchase,

offer to purchase, invitation of offers to purchase, invitations of offers to sell, or dealing in any other manner in any security or securities ... directly or indirectly:

(1) engage in any fraud or fraudulent practice.

TEX.REV.CIV.STAT.ANN. art. 581–29(C)(1) (Vernon Supp.1991). Paragraph two of the indictment specifically alleges that Cook committed fraud by intentionally failing to disclose a prior conviction which is a material fact, for the purpose of inducing the investor, Floyd Elkins, to purchase the security. Article 581–4(F) defines fraud and fraudulent practice for purposes of the Securities Act. Included in that definition is "an intentional failure to disclose a material fact." TEX.REV.CIV.STAT.ANN. art. 581–4(F) (Vernon 1964). This is the theory under which Cook was charged and convicted. It was not necessary to allege the elements of article 581–29(C)(3). *Hawkins v. State*, 656 S.W.2d 70, 72 (Tex.Crim.App.1983); *Morgan v. State*, 644 S.W.2d 766, 771 (Tex. App.—Dallas 1982, no pet.). We overrule point of error one.

█ In his second point of error, Cook contends that the trial court erred in overruling his motion to quash the indictment, as the indictment fails to allege a culpable mental state. The indictment alleges that Cook "did sell to Floyd Elkins a security." Cook argues that the indictment should have alleged that he intentionally, knowingly, or recklessly sold a security. He explains that where offenses are defined and conduct prescribed outside the Penal Code, such as the Texas securities law, and where such offenses do not require or dispense with the requirement of a culpable mental state, section 6.02 of the Penal Code applies. TEX.PENAL CODE ANN. § 6.02 (Vernon 1974). To support his argument, Cook cites *Koah v. State*, 604 S.W.2d 156 (Tex. Crim.App. [Panel Op.] 1980). In that case the court upheld as proper an indictment that alleged the appellant intentionally sold unregistered securities. *Id.* at 160. We do not find *Koah* to be controlling here.

█ As stated above, the indictment alleged Cook committed fraud in the sale of a security by intentionally failing to disclose a material fact. The statute specifically states that an intentional failure to disclose a material fact constitutes fraud. The purpose of the Securities Act is to require sellers of securities to be truthful and provide investors with all material facts. *Bridwell v. State*, 761 S.W.2d 401, 405 (Tex.App.—Dallas 1988), *aff'd*, 804 S.W.2d 900 (Tex.Crim.App.1991). The State must prove a culpable mental state only as it relates to the action prohibited by the statute. *See United States v. Brown*, 578 F.2d 1280, 1284 (9th Cir.), *cert. denied*, 439 U.S. 928, 99 S.Ct. 315, 58 L.Ed.2d 322 (1978). In *Koah*, the prohibited conduct was the *sale* of unregistered securities, therefore, the culpable mental state must be in conjunction with the *sale*. In the instant case, the prohibited conduct is the *fraud*, i.e., the failure to disclose a material fact. Therefore, the culpable mental state must be in conjunction with the *fraud*. The indictment properly alleged specific intent as it relates to the action constituting the fraudulent conduct by alleging an *intentional* failure to disclose. We overrule point of error two.

## JURY CHARGE

In his third point, Cook asserts that the trial court erred in overruling his objections to the jury charge which did not require the jury to find he sold securities knowingly or intentionally, thus permitting the jury to convict him of conduct that did not constitute an offense.

█ The jury charge must correspond to the allegations in the indictment. *Jackson v. State*, 633 S.W.2d 897, 899 (Tex. Crim.App.1982). Here, the jury was instructed that it was to find Cook guilty as charged in paragraph two of the indictment if it found that he sold a security to Floyd Elkins and in doing so failed to disclose that he had been convicted of federal securities fraud in 1978. The jury was instructed that it is "unlawful for any person to directly or indirectly engage in any fraud or fraudulent practice in connection with the sale ... [of] any security." The instructions included the statement that the

term "security" includes an investment contract, and it defined the terms "investment contract," "sale," "fraud," and "material fact." It also defined the mental states "knowingly" and "intentionally." The charge set out all the necessary elements of the offense and incorporated the allegations of the indictment. The charge was correct as given. *See Benson v. State,* 661 S.W.2d 708, 713–14 (Tex.Crim.App. 1982) (on reh'g), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). We overrule point of error three.

■ In his eighth point, Cook alleges the trial court erred in overruling his objection to the charge and refusing to limit the definition of the culpable mental state to the result of his conduct. The Penal Code delineates three "conduct elements" which may be involved in an offense: 1) the nature of the conduct, 2) the result of the conduct, and 3) the circumstances surrounding the conduct. TEX.PENAL CODE ANN. § 6.03 (Vernon 1974); *McQueen v. State,* 781 S.W.2d 600, 603 (Tex.Crim.App. 1989). An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply. *McQueen,* 781 S.W.2d at 603. Cook contends that a violation of the Securities Act is a result-oriented crime and, therefore, the jury charge should have limited the definition of the required mental state to the result of his conduct. The complained of portion of the charge is as follows:

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct

when it is his conscious objective or desire to engage in the conduct or cause the result.

Under the charge as given, the jury was allowed to find Cook guilty if it found he possessed the *mens rea* with respect to any of the three conduct elements.

■ We disagree that a violation of the Securities Act is a result-oriented crime. The section of the statute under which Cook was convicted states:

Any person who shall:

C. In connection with the sale, offering for sale or delivery of, the purchase, offer to purchase, invitation of offers to purchase, invitations of offers to sell, or dealing in any other manner in any security or securities ... directly or indirectly:

(1) engage in any fraud or fraudulent practice.

TEX.REV.CIV.STAT.ANN. art. 581–29 (Vernon Supp.1991). Where specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself. *See, e.g.,* TEX.PENAL CODE ANN. § 47.02 (Vernon 1989) (gambling). Where otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances. *See McClain v. State,* 687 S.W.2d 350, 355 (Tex.Crim.App. 1985) (theft). Conduct that is criminalized because of its result requires culpability as to that result. *Alvarado v. State,* 704 S.W.2d 36, 39 (Tex.Crim.App.1985) (injury to a child); *Lugo–Lugo v. State,* 650 S.W.2d 72, 81 (Tex.Crim.App.1983) (murder).

The Securities Act was enacted to regulate the sale of securities and to protect the public from fraud and imposition by those engaged in selling worthless securities. *Kadane v. Clark,* 135 Tex. 496, 501, 143 S.W.2d 197, 199 (1940). Selling securities is in and of itself a legal activity. A violation of the Securities Act is not a "nature of the conduct" offense. Selling securities under certain circumstances, i.e. by fraudulent means, is forbidden. Thus, a violation of the Securities Act is an offense dealing

with the "circumstances surrounding the conduct," and the culpable mental state of "knowingly" must apply to those surrounding circumstances. *McQueen*, 781 S.W.2d at 603. Further, it is the act of selling by fraudulent means itself which is forbidden, not the *result* of the sale. A violation of the Securities Act is not a result-oriented crime. The trial court did not err in overruling Cook's objection to the charge and refusing to limit the definition of the culpable mental state to the result of the conduct.[1] We overrule point of error eight.

## SUFFICIENCY OF THE EVIDENCE

■ In points four, seven and nine, Cook alleges the evidence is insufficient to support his conviction. In point four he claims there is no evidence that he "intentionally, knowingly or otherwise with any other degree of culpability, sold securities because the indictment did not so allege a result, the charge did not so require." We interpret this to mean that because the indictment was not worded in the manner he alleges in point two is proper and the charge follows the indictment, then Cook was convicted by a jury that did not find an essential element of the offense. As discussed above, both the indictment and charge were proper. We shall, however, consider whether the evidence is sufficient to support the conviction.

In cases where the sufficiency of the evidence to support a conviction is at issue the reviewing court must apply the test established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *Jackson*, the Supreme Court required that all the evidence be viewed in the light most favorable to the prosecution to determine whether any rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. All conflicts are to be resolved in favor of the verdict. *Id.* at 319, 99 S.Ct. at 2789. The jury found that Cook committed fraud when he sold a security, an investment contract, to Floyd Elkins and in doing

so, intentionally failed to disclose to Elkins that he had been convicted of mail fraud in March 1978, a material fact, and, further, that he failed to disclose the information for the purpose of inducing Elkins to purchase the security.

The jury had before it copies of Oreo's brochure, the purchase application signed by Elkins, the mining agreement signed by Elkins, the agreement between Chemex and Oreo, signed by Cook in the capacity of president of Oreo, and an extension agreement between Chemex and Oreo, signed by Bill Schmidt, president and Cook, owner of Oreo. The jury heard testimony explaining business relations between Oreo, Chemex and Orex, and the details of the specific investment offer at issue. Evidence shows Cook's position in Oreo and his role in its business dealings and this investment offer. Evidence reveals how much money Oreo made and, to some extent, how it was spent. There was testimony that no Oreo records reflect that any investor actually received any gold or a refund of his or her money. Bill Schmidt, president of Oreo, testified that he thought all investors lost all money they invested. Schmidt also stated that on November 13, 1987, the Alaska Department of Commerce and Economic Development Division of Banking, Securities and Corporations issued a cease and desist order ordering Oreo and its agents to stop offering securities in Alaska. A letter from the Texas State Securities Board dated November 30, 1987 was placed in evidence which identified Cook as one distributing sales materials and warned Oreo that its brochure contained a false statement and omitted material information. Three investors testified that at the time they made the investment they were not aware of Cook's involvement or his prior conviction and would not have invested had they been aware of this information. Two investors specifically stated that they never received any gold or a refund of their investment. Rich Billings, assistant to

---

1. We note also when an offense is not clearly categorized as to the type of offense it is, it is not error for the trial court to submit the statutory definitions of both "intentionally" and "knowingly." *See Murray v. State*, 804 S.W.2d 279, 281 (Tex.App.—Fort Worth 1991, no pet.); *Saldivar v. State*, 783 S.W.2d 265, 267 (Tex. App.—Corpus Christi 1989, no pet.).

Oreo's receiver, visited the mine site. He found dilapidated, rusting vehicles and heavy equipment which obviously had not been in use for sometime. There was no activity at the site at the time of his investigation. The equipment he saw was not "sophisticated mining equipment" as advertized in Oreo's brochure. We conclude that based on the evidence before the jury, it could have found all the elements of the crime beyond a reasonable doubt. The evidence is sufficient to support the conviction. *See Hawkins v. State*, 656 S.W.2d 70, 73 (Tex.Crim.App.1983). We overrule point of error four.

■■■■ In his seventh point of error, Cook contends the evidence is insufficient to sustain the conviction because the State failed to corroborate the accomplice testimony of Bill Schmidt. Schmidt, the president of Oreo, explained from the witness stand that he, too, is under indictment for securities fraud and signed an agreement to plead guilty and testify as a State's witness against Cook. Cook contends that the only evidence linking him to any sales of investments is Schmidt's testimony. He points to article 38.14 of the Code of Criminal Procedure which provides:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). In construing this requirement the Court of Criminal Appeals has stated:

> The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of the other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not.

*Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Crim.App.1968). The law does not require that there be *direct* evidence pointing to the accused, but merely requires other evidence *tending to connect* the defendant with the offense. *Minor v. State*, 108 Tex. Crim. 1, 299 S.W. 422, 428–29 (1927) (on reh'g). It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which satisfies the test. *Id.* 299 S.W. at 429. The State need not corroborate the accomplice witness upon *all* of his testimony. The law only demands that there be testimony other than that of the accomplice witness which in and of itself tends to connect the accused with the crime alleged. *Forbes v. State*, 513 S.W.2d 72, 77 (Tex.Crim.App.1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975). All the facts and circumstances in evidence may be looked to as furnishing the necessary corroboration. *Moore v. State*, 700 S.W.2d 193, 203 (Tex. Crim.App.1985), *cert. denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986). We have earlier detailed the evidence before the jury and conclude that, excluding Schmidt's testimony, there is substantial independent evidence connecting Cook with the offense. We overrule point of error seven.

■■■■ In his ninth point of error, Cook argues the evidence is insufficient to sustain his conviction because there is no evidence that he, directly or indirectly, sold a security to Elkins. Cook claims that he cannot be held liable since Elkins testified that C.J. Comu, a salesman working for Johnson, Matthey Gold Marketing Firm sold him the investment and the law of parties was not available to the jury. Cook argues that the State had to prove him guilty as the primary actor, the actual salesman.

The jury charge included the following instruction:

> [T]he term 'sale' or 'offer for sale' shall include a subscription, an option for sale, a solicitation of sale, a solicitation of an offer to buy, an attempt to sell, or an offer to sell, *directly or by an agent or salesman*, by a circular, letter, or advertisement or otherwise. [Emphasis added.]

Elkins testified that he bought the investment from Comu, a salesman for Johnson, Matthey Gold Marketing Firm who represented Oreo and Orex. Schmidt stated that Oreo had about thirty sales agents at one time and, later, sales were done by independent contractors. Oreo had six different locations of sales operations in Dallas County and offices in Las Vegas and Austin. Schmidt testified that Cook had been supervisor of the sales office located on Midway Road in Dallas, but when Cook developed medical problems he brought in Tyrus Mulkey to manage that office. Mulkey contracted with Cook to purchase the contents of the office and set up his own company, Au Marketing. Mulkey then entered a sales contract with Oreo and hired his own sales agents to sell interests in Oreo. Other evidence shows that Comu worked for Au Marketing. It was clear to Elkins that his contract was with Oreo, not Au Marketing. Comu was merely an agent. Cook, as owner of Oreo, was the ultimate liable party under the statute which criminalizes direct and indirect activities. The charge correctly placed the law before the jury. Cook is criminally responsible for the innocent actions of Comu in this transaction. TEX.PENAL CODE ANN. § 7.02(a) (Vernon 1974). The foregoing evidence is sufficient to support the conviction. The State need not show Cook personally made the sale to Elkins. We overrule point of error nine.

## SENTENCING

In his fifth point of error, Cook claims the trial court erred in basing his sentence on an enhancement paragraph that was unavailable for such purpose. Cook asserts that the evidence at the punishment phase established that the acts alleged as an essential element of paragraph two of the indictment were the same as the acts alleged in the enhancement paragraph of the indictment. The use of a prior conviction to prove an essential element of an offense bars the subsequent use of that prior conviction in the same indictment for enhancement purposes. *McWilliams v. State*, 782 S.W.2d 871, 875 (Tex.Crim.App. 1990).

Paragraph two of the indictment alleges that Cook committed fraud in the sale of a security by failing to disclose to the investor that on March 16, 1978, he had been convicted of violating section 1341 of Title 18 of the United States Code, the federal mail fraud statute. The enhancement paragraph alleges that Cook had previously been convicted on April 18, 1975, of a violation of section 401 of title 18 of the United States Code which provides that a court of the United States may hold an individual appearing before it in contempt. This conviction was on the criminal docket of the United States District Court, Northern District, Dallas Division, CR 3–74–495, by which judgment Cook was ordered confined in the U.S. Penitentiary for 3 years. Clearly, the offense alleged in paragraph two is different from the offense alleged in the enhancement paragraph. We overrule point of error five.

In his sixth point of error, Cook contends that the trial court erred in cumulating his sentence with a federal sentence. He claims that since that action is not authorized by the Code of Criminal Procedure, it was not an option for the trial court. Cook relies on the case of *Fewell v. State*, 687 S.W.2d 807 (Tex.App.—Houston [14th Dist.] 1985, no pet.). We agree that the holding in *Fewell* is correctly stated. We conclude, however, that *Fewell* no longer accurately states the law in Texas on this point.

It is well settled that cumulative sentencing is not permitted absent statutory authority. *Prince v. State*, 44 Tex. 480, 483–84 (1876). We are aware of article 42.08 of the Texas Code of Criminal Procedure, which in part states:

> When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction.... in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run

concurrently with the other case or cases, and sentence and execution shall be accordingly.

TEX.CODE CRIM.PROC.ANN. art. 42.08 (Vernon Supp.1991). At the time *Fewell* was decided a different version of article 42.08 was in effect:

> When the same defendant has been convicted on two or more cases, *and the punishment assessed in each case is confinement in an institution operated by the Department of Corrections or the jail for a term of imprisonment,* judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction, except that in the discretion of the court, the judgment in the second and subsequent convictions may either be that the punishment shall begin when the judgment and sentencing in the preceding conviction has ceased to operate, or that the punishment shall run concurrently with the other case or cases, and sentence and execution shall be accordingly. [Emphasis added.]

Act of June 18, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex.Gen.Laws 317, 486–87, *amended by* Act of April 11, 1985, 69th Leg., R.S., ch. 29, § 1, 1985 Tex.Gen.Laws 404, *amended by* Act of June 17, 1987, 70th Leg., R.S., ch. 513, § 1, 1987 Tex.Gen.Laws 2125, *amended by* Act of June 15, 1989, 71st Leg., R.S., ch. 785, § 4.11, 1989 Tex. Gen.Laws 3471, 3495. The *Fewell* decision specifically relied on the foregoing italicized language. That language was deleted from article 42.08 by the 1987 amendment. The present version makes no reference to a place of confinement. We must determine whether the present version is to be interpreted as forbidding the cumulation of state and federal sentences.

The precursor to the version in effect at the time *Fewell* was decided provided:

> When the same defendant has been convicted in two or more cases, *and the punishment assessed in each case is confinement in the penitentiary or the jail for a term of imprisonment,* judgment and sentence shall be pronounced in each case in the same manner as if

there had been but one conviction, except that in the discretion of the court, the judgment in the second and subsequent convictions may either be that the punishment shall begin when the judgment and sentence in the preceding conviction has ceased to operate, or that the punishment shall run concurrently with the other case or cases, and sentence and execution shall be accordingly. [Emphasis added.]

Revised Code of Criminal Procedure article 774 (1925), *amended* 1965, 1987, 1989, current version at TEX.CODE CRIM.PROC.ANN. art. 42.08 (Vernon Supp.1991). Under this version of the statute, the Court of Criminal Appeals ruled that cumulation was permitted where the prior conviction was in federal court. *See Ex parte Spears,* 154 Tex.Crim. 112, 235 S.W.2d 917, 918 (1950); *Ex parte Lawson,* 98 Tex.Crim. 544, 266 S.W. 1101, 1102 (1924). It has been stated that stacking federal and state sentences was permissible under the wording of the 1925 statute because both state and federal felony sentences are served "in the penitentiary." *See Goodwill v. State,* 639 S.W.2d 697, 699 (Tex.Crim.App.1982) (Teague, J., dissenting). In 1982, when considering the same version of article 42.08 that was in effect at the time of the *Fewell* decision, the Eastland Court of Appeals made the following observation:

> If the legislature chooses to permit the cumulation or "stacking" of a Texas state sentence, so that it begins after completion of a prior federal or out of state sentence, the legislature is free to restore the original language which used the broader reference to confinement in 'the penitentiary.'

*Sturgis v. State,* 657 S.W.2d 813, 815 (Tex. App.—Eastland 1982) *aff'd,* 770 S.W.2d 569, 570 (Tex.Crim.App.1983).

In construing a statute, a court may consider, among other matters, the: 1) object sought to be obtained; 2) circumstances under which the statute was enacted; 3) legislative history; and 4) former statutory provisions. TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988). The dominant consideration is the intention of the legisla-

ture. *State v. Arellano,* 801 S.W.2d 128, 131 (Tex.App.—San Antonio 1990, no writ). In enacting an amendment to a statute, the legislature is presumed to have changed the law, and the court should adopt a construction that gives effect to the intended change, rather than one that renders the amendment useless. *Maycock v. State,* 801 S.W.2d 567, 568 (Tex.App.—Dallas 1990, no pet.). We must presume that the legislature used every word in the new statute for a purpose and that every word excluded from the statute must have been excluded for a purpose. *Id.* at 568–69. We presume the legislature was aware of prior court constructions of the statute. *Townsend v. State,* 427 S.W.2d 55, 62 (Tex.Crim. App.1968).

Considering the prior versions of article 42.08 and how they have been construed, and applying the stated rules of statutory construction, we conclude that by removing the language, "and the punishment assessed in each case is confinement in an institution operated by the Department of Corrections or the jail for a term of imprisonment," the legislature intended to allow cumulation of state and federal sentences. To interpret the new statute as not affecting a change would render the amendment meaningless. The trial court did not err in cumulating Cook's sentence with his prior federal sentence. We overrule point of error six.

 In his tenth point of error, Cook claims that even if the trial court can properly stack this sentence on a federal sentence, its attempt to do so was ineffective because the cumulation order did not meet the requirements specified by the Court of Criminal Appeals in *Ward v. State,* 523 S.W.2d 681, 682 (Tex.Crim.App.1975). We need not reach the merits of this contention. While Cook did object to the trial court's action in cumulating a state sentence with a federal sentence, he did not there object to the sufficiency of the trial court's order directing the cumulation. An appellant may not assert error pertaining to his sentence or punishment where he failed to object or otherwise raise such error in the trial court. *Mercado v. State,*

718 S.W.2d 291, 296 (Tex.Crim.App.1986); *Torres v. State,* 751 S.W.2d 705, 708 (Tex. App.—Corpus Christi 1988), *pet. dism'd, improvidently granted,* 785 S.W.2d 824 (Tex.Crim.App.1989). We overrule point of error ten.

We affirm the judgment of the trial court.