In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00196-CR


______________________________




JEFFERY DUANE MERRITT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


 Lamar County, Texas


Trial Court No. 20864




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Jeffery Duane Merritt was convicted, on a guilty plea subject to a plea bargain, to possession
with intent to deliver a controlled substance (methamphetamine), in an amount of more than four
grams but less than 200 grams, in a drug-free zone. In this case, the trial court sentenced Merritt to
forty years' imprisonment, to run consecutive to a federal sentence. Merritt was also convicted of
two other offenses, both of which are also before this Court in separate appeals. (1) Although the case
was a plea bargain, Merritt asked the trial court for permission to appeal the imposition of
consecutive sentences as opposed to concurrent sentences. The trial court granted permission to
appeal that issue.

 Merritt was represented by appointed counsel at trial and by different appointed counsel on
appeal. Merritt's appellate attorney has filed a brief in which he concludes that, after a review of the
record and the related law, this appeal is frivolous and without merit. 

 Appellate counsel summarizes the issue in his brief and states that he finds no error preserved
for appeal that could be successfully argued. The brief contains a professional evaluation of the
record. This meets the requirements of Anders v. California, 386 U.S. 738 (1967); Stafford v. State,
813 S.W.2d 503 (Tex. Crim. App. 1991); and High v. State, 573 S.W.2d 807 (Tex. Crim. App.
[Panel Op.] 1978).

 Counsel mailed a copy of the brief to Merritt February15, 2008, informing Merritt of his right
to examine the entire appellate record and to file a pro se response. Counsel simultaneously filed
a motion with this Court seeking to withdraw as counsel in this appeal. This Court notified Merritt
that any pro se response was due on or before March 17, 2008. Merritt has not filed a response, nor
has he requested an extension of time in which to file such a response. 

 Merritt has been granted the limited right to appeal the trial court's decision to impose
consecutive sentences rather than concurrent sentences. In this case, Merritt's sentence is to run
consecutive to a federal sentence. However, Texas law permits trial courts to impose Texas
sentences consecutive to federal sentences. Cook v. State, 824 S.W.2d 634 (Tex. App.--Dallas
1991), pet. ref'd, 828 S.W.2d 11 (Tex. Crim. App. 1992). Our review has not revealed any reversible
error. (2)



 We affirm the judgment of the trial court. 




 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 17, 2008

Date Decided: April 22, 2008 


Do Not Publish




1. See Merritt v. State, cause numbers 06-07-00197-CR and 06-07-00198-CR.
2. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Merritt in this case. No substitute
counsel will be appointed. Should Merritt wish to seek further review of this case by the Texas
Court of Criminal Appeals, Merritt must either retain an attorney to file a petition for discretionary
review or he must file a pro se petition for discretionary review. Any petition for discretionary
review must be filed within thirty days from the date of either this opinion or the last timely motion
for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition for
discretionary review must be filed with this Court, after which it will be forwarded to the Texas
Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. 
Any petition for discretionary review should comply with the requirements of Rule 68.4 of the Texas
Rules of Appellate Procedure. See Tex. R. App. P. 68.4.


if">FIDEL BARROSO TRONCOSO, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 23rd Judicial District Court
Brazoria County, Texas
Trial Court No. 42,161


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Fidel Barroso Troncoso was convicted of murder and assessed fifty-five years'
imprisonment by a jury. He contends the trial court erred in admitting certain autopsy
photographs of the victim and by not submitting a sudden passion charge to the jury on
punishment. We overrule these contentions and affirm the judgment. 
Background
          The State's evidence showed that, when Lucy Trevino opened her taco stand in
February of 2002, she discovered a Chevrolet Suburban outside with blood dripping from
the door. She telephoned police, who found the Suburban still running, with the lights on,
and a deceased Arturo Macias inside. 
          The police investigation led them to Troncoso's residence. On arrival, the police
gained Troncoso's consent to enter the residence. While accompanying Troncoso to his
bedroom, police noticed a laundry basket containing red-stained clothing. Police asked
Troncoso to accompany them to the sheriff's department for questioning, and he agreed. 
A subsequent search of Troncoso's residence revealed clothing, a machete, and a knife,
all with Macias' blood on them. 
          Troncoso was arrested and gave two statements to law enforcement officers. In
each of these statements, he admitted killing Macias. He stated that the events leading
to Macias' death were as follows: He had been living with Minerva De La Rosa when she
left him and began seeing Macias. De La Rosa, however, stayed in contact with Troncoso. 
She later voiced her desire to return to Troncoso, but feared Macias' reaction. On the night
of Macias' death, De La Rosa telephoned Troncoso and asked him to follow Macias and
scare him or "make him disappear." Troncoso located Macias and followed him to
Trevino's taco stand with the intention of scaring him into leaving De La Rosa alone. 
Troncoso got out of his truck and approached Macias' Suburban. Troncoso stated that,
when he approached Macias' vehicle, Macias opened the door and began kicking him, so
Troncoso struck him with a machete. Macias was still kicking him, however, so he stabbed
him in the chest with a knife. Troncoso told police that Macias was younger and stronger,
and that he had to defend himself. The two statements were videotaped and played for
the jury. 
          Troncoso pled not guilty and testified in his own defense. At trial, Troncoso
admitted killing Macias, but testified differently to the sequence of events leading to Macias'
death. He testified that he followed Macias for ten minutes and that, when they both
stopped, he approached Macias' Suburban and started kicking the door. Macias then
opened the door and began kicking him, but Troncoso did not hit Macias with the machete;
instead, Troncoso retreated to his truck. Macias followed him, telling him he was going to
make him disappear. Troncoso testified he was very frightened because Macias was
younger and stronger. He also testified he saw something shiny in Macias' belt, which he
believed was a weapon. Troncoso was then able to grab a machete from his truck and
strike Macias with it. Macias went back to his Suburban, where Troncoso assumed he was
obtaining a weapon. Troncoso then grabbed a knife from his truck, approached Macias,
who was in his Suburban, and stabbed him in the chest. He testified he was very
frightened and did not remember a lot of the events. 
          Dr. Stephen Pustilnik, the deputy chief medical examiner for Galveston County,
testified regarding the injuries Macias sustained. He testified Macias had three wounds to
the head, two to the face, ten to twelve stab wounds to the chest, and several defensive
wounds to his hands. Pustilnik used a mannequin and autopsy photographs to illustrate
those injuries to the jury. 
          The charge on guilt/innocence was read to the jury, including an instruction on self-defense. The jury returned a verdict of guilty. The trial then proceeded to the punishment
phase, where several of Troncoso's relatives testified on his behalf. Troncoso objected to
the proposed jury charge on punishment because it did not contain an instruction on
sudden passion. The trial court overruled the objection. 
Autopsy Photographs 
          Troncoso contends the trial court erred by allowing the State to introduce autopsy
photographs of Macias' wounds. During trial, Pustilnik testified regarding the various types
of injuries Macias sustained, including incision, chopping, and stabbing type wounds. He
testified Macias had various groups of wounds to his head, chest, hands, and face. He
used a diagram and photographs to show the jury the locations of and types of wounds. 
The diagram consisted of a plastic overlay on which Macias' wounds were drawn. The
overlay was then placed on a mannequin to illustrate the position of Macias' wounds as
Pustilnik testified. Pustilnik also used photographs of Macias taken during the autopsy to
illustrate the wounds. In State's Exhibit 4, which was admitted and published to the jury
without objection, the wounds to Macias' face were depicted. Pustilnik testified the wounds
to Macias' face included an incision wound and a stab wound. The State then offered
Exhibits 27 through 29. Defense counsel objected on the bases that the probative value
of the photographs was outweighed by their prejudicial effect and that the photographs
were cumulative because Pustilnik had already shown, through his testimony and on the
mannequin, where the injuries were sustained. The trial court sustained the objection to
Exhibit 28, but overruled the objection as to Exhibits 27 and 29, and admitted those
exhibits. The court, however, did not let the State publish Exhibits 27 and 29 to the jury at
that time. It is unclear from the record when or if those exhibits were published to the jury. 
          Pustilnik's testimony continued with his determination that the multiple stab wounds
to Macias' left lung and heart caused his death. Juror 11 then began crying and attempted
to leave the courtroom. The court took a ten-minute recess and continued after
assurances from Juror 11 that she was ready to continue. Pustilnik continued his
testimony on the defensive wounds Macias suffered to his hands. The State offered
Exhibits 30 and 31 to illustrate those defensive wounds, which were admitted without
objection. Troncoso contends on appeal the trial court erred in admitting Exhibits 27 and
29. 
 
          The trial court's decisions concerning admission of evidence are held to an abuse
of discretion standard. Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996); Coffin
v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). A trial court is given wide discretion
when deciding admissibility of photographs. Sonnier v. State, 913 S.W.2d 511, 518 (Tex.
Crim. App. 1995); Etheridge v. State, 903 S.W.2d 1, 21 (Tex. Crim. App. 1994). An abuse
of discretion exists when the trial court's ruling falls outside the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).
          Texas Rule of Evidence 403 provides that, although relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. Tex. R. Evid. 403; Sonnier, 913 S.W.2d at
518. In determining whether the inflammatory nature outweighs its probative value, the
trial court should consider "the inherent tendency that some evidence may have to
encourage [the] resolution of material issues on an inappropriate basis and should balance
carefully against it the host of factors affecting probativeness, including relative weight of
the evidence and the degree to which its proponent might be disadvantaged without it." 
Fuller v. State, 829 S.W.2d 191, 206 (Tex. Crim. App. 1992). Relevant criteria in
determining whether the trial court's determination was reasonable include: (1) whether
the ultimate issue was seriously contested by the opponent; (2) whether the state had other
convincing evidence to establish the ultimate issue to which the evidence was relevant;
(3) whether the probative value of the evidence was not, either alone or in combination with
other evidence, particularly compelling; and (4) whether the evidence was of such a nature
that a jury instruction to disregard it for any but its proffered purpose would not likely have
been efficacious. Montgomery, 810 S.W.2d at 392–93 (op. on reh'g). Rule 403 favors the
admission of relevant evidence and presumes that relevant evidence will be more
probative than prejudicial. Etheridge, 903 S.W.2d at 21. 
          Relevant factors in ascertaining the admissibility of photographs under Rule 403
include the number of exhibits offered, their gruesomeness, detail, size, whether they are
black and white or color, whether they are close-up shots, whether the body is naked or
clothed, the availability of other means of proof, and other circumstances unique to the
individual case. Santellan v. State, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997). Where
pictorial evidence will help the jury understand verbal testimony, such as the technical
language used by a medical doctor in describing the injuries sustained by a victim of a
crime, a trial court does not abuse its discretion in admitting these photographs. Harris v.
State, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983). Generally, autopsy photographs are
admissible unless they depict mutilations of the victim due to the autopsy itself. See Rojas
v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998). Photographs that depict the nature,
location, and extent of a wound have generally been deemed probative enough to
outweigh any prejudicial effects such photographs may have on the jury, and these types
of photographs are therefore properly admissible. See Etheridge, 903 S.W.2d at 21. 
Moreover, photographs are generally admissible where verbal testimony about the same
matter is admissible. Jones, 944 S.W.2d at 652; Emery v. State, 881 S.W.2d 702, 710
(Tex. Crim. App. 1994).
          Troncoso contends the admission of these "gruesome" photographs substantially
outweighed their probative value. He contends that, because he had admitted from the
outset he killed Macias, and since the photographs were cumulative of the medical
examiner's testimony concerning the wounds, the photographs served no purpose but to
inflame the minds of the jury. Although Troncoso did not dispute he killed Macias, he pled
not guilty, therefore requiring the State to prove each element of the crime. See Mathews
v. State, 40 S.W.3d 179, 185 (Tex. App.—Texarkana 2001, pet. ref'd). Photographs
showing a victim's wounds may be admitted to clarify and support observations and
conclusions about the victim's injuries and to reveal the cause of death as alleged in the
indictment. See Madden v. State, 799 S.W.2d 683, 696–97 (Tex. Crim. App. 1990); Moss
v. State, 860 S.W.2d 194, 196 (Tex. App.—Texarkana 1993, no pet.). The State alleged
in the indictment, as the manner and means of the murder, that Troncoso used a knife and
a machete, with the intent to cause death and serious bodily injury. Exhibits 27 and 29
show the machete wounds to Macias' head and the stab wounds to his chest. Therefore,
these photographs were probative evidence of the manner and means of the murder as
alleged in the indictment.
          In addition, Troncoso's testimony during trial asserted he acted in self-defense. The
State contends, and we agree, that the photographs were probative to rebut that defensive
theory. The photographs depicted the numerous wounds which Macias suffered and the
relative force required to inflict them. The photographs enabled the jury to see how the
physical evidence and circumstances of the stabbing compared to Troncoso's version of
the facts. The photographs had probative value.  
          Troncoso contends the photographs are merely cumulative of the medical
examiner's testimony and diagram and, therefore, their only purpose was to inflame the
minds of the jury. The photographs, however, supported Pustilnik's testimony and helped
explain Macias' injuries to the jury. The Texas Court of Criminal Appeals has held that,
where pictorial evidence will help the jury understand verbal testimony, such as the
technical language used by a medical doctor in describing the injuries sustained by a victim
of a crime, a trial court does not abuse its discretion in admitting these photographs. 
Harris, 661 S.W.2d at 107; see also Williams v. State, 937 S.W.2d 479, 488 (Tex. Crim.
App. 1996) (finding photographs admissible under Tex. R. Evid. 403 even if they merely
corroborate other kinds of evidence); Bacey v. State, 990 S.W.2d 319, 326 (Tex.
App.—Texarkana 1999, no pet.) (finding when there are two or more photographs
depicting same thing but from different perspectives, jury can gain information it might not
otherwise have when viewing other photographs from other perspectives). The
photographs of the numerous wounds to Macias' chest and head aided the jury in
interpreting and understanding both Pustilnik's testimony and Troncoso's testimony as to
how the attack occurred.
          This probative value was not substantially outweighed by any undue prejudice. The
two photographs of which Troncoso complains are autopsy photographs of the wounds to
Macias' head and chest. From the record, they appear to be relatively small, depict a
narrow, focused view of only those two portions of the body, display relatively little blood,
and are not excessively gruesome.


 Although disturbing, they depict nothing more than
the reality of the brutal crime committed:

Appellant must realize that it is precisely the quality which we describe as
"powerful" which gives rise to his arguments that the photographs are
prejudicially inflammatory. But when the power of the visible evidence
emanates from nothing more than what the defendant has himself done we
cannot hold that the trial court has abused its discretion merely because it
admitted the evidence. A trial court does not err merely because it admits
into evidence photographs which are gruesome. 
 
Sonnier, 913 S.W.2d at 519.  
          Troncoso cites Reese v. State, 33 S.W.3d 238 (Tex. Crim. App. 2000), in support
of his position that the photographs were unduly prejudicial. In Reese, 33 S.W.3d at 239,
the state introduced, during the punishment phase of trial, a photograph of the victim in her
casket. Also visible in the photograph was the victim's unborn child, who died when the
victim was killed. Id. The fetus had been removed from the victim after her death and
wrapped in what appears to be a blanket. Id. The Texas Court of Criminal Appeals found
that, while the photograph had some probative value to show the fact the victim and her
baby were killed, those facts were not contested, and the jury by its verdict had already
found beyond a reasonable doubt that the victim was dead. Id. at 242. The court found
the little probative value the photograph had was substantially outweighed by the prejudice
from the obviously emotional photograph. Id. at 243.
          In this case, unlike Reese, the autopsy photographs depicted facts of consequence
that were in dispute. They directly refuted Troncoso's assertions of self-defense and aided
the jury in understanding Pustilnik's testimony concerning Macias' wounds. We also
cannot equate the prejudice from Macias' autopsy photographs to the prejudice of the
photographs in Reese. The Reese court noted how the unborn child in the photograph
appeared innocent and vulnerable. Id. The court noted society's natural inclination to
protect the innocent and vulnerable, and found that the photograph had an emotional
impact which suggested the jury's decision be made on an emotional basis, not on the
basis of other relevant evidence. Id. The autopsy photographs in this case were
disturbing, but they did not come charged with the same emotional impact as the
photograph in Reese, nor did they suggest that the jury's decision be made on an
emotional basis as opposed to the facts of the case. The photographs depicted facts that
were of consequence in the case. They were not excessively gruesome, but were small,
showed relatively little blood, and only depicted the reality of the crime committed.


 
          Troncoso emphasizes Juror 11's reaction to Pustilnik's testimony as evidence of the
prejudicial impact of the photographs. Troncoso contends Juror 11's reaction proves unfair
prejudice because it shows the photographs had an undue tendency to suggest a decision
on an emotional basis. Here, we have the unique situation where a juror expressed her
emotions in open court. During Pustilnik's testimony, Juror 11 began to cry and attempted
to leave the courtroom and enter the jury room. The door was locked, so the juror stood
crying at the doorway. Frank Dixon, the bailiff, testified at the hearing on the motion for
new trial that Juror 11 was "upset with the photos and couldn't accept the fact of the
graphics of them . . . ." There is nothing in the record, however, to suggest which
photographs caused this outburst. There were several photographs published to the jury. 
Exhibit 4 depicted the wounds to Macias' face, and several crime scene photographs were
before the jury. The record reflects that the photographs in question, Exhibits 27 and 29
were not published to the jury when Juror 11 had her outburst. In any event, the standard
for determining prejudice is that of a juror of normal sensitivity, and the photographs in this
case were not so horrifying that a juror of normal sensitivity would have had difficulty
rationally deciding the issues after viewing the photographs. See Fuller v. State, 829
S.W.2d 191, 206 (Tex. Crim. App. 1992) (finding inquiry is whether photographs so
horrifying or appalling that juror of normal sensitivity would necessarily encounter difficulty
rationally deciding critical issues of case after viewing the photographs). 
          In view of the relevant factors, the prejudicial effect of the disputed photographs did
not substantially outweigh their probative value. The photographs had high probative value
to establish the cause of death alleged in the indictment and to rebut Troncoso's claim of
self-defense. This probative value was not substantially outweighed by any unfair
prejudice from the photographs, which were not excessively gruesome and owe any
disturbing nature to the crime itself. Accordingly, the trial court properly exercised its
discretion in admitting the photographs. This point of error is overruled.
Sudden Passion
          Troncoso also contends the trial court erred by not instructing the jury at the
punishment stage on sudden passion. He contends there was some evidence he lost the
ability of calm, cool reflection and acted on his emotions after he was provoked by Macias'
aggression. He contends there was evidence that he did not intend to kill Macias, that
Macias kicked him, that he thought the victim had a weapon, that he was very afraid, and
that his head "shut down." 
          The Penal Code provides that, at the punishment stage of a trial for murder, "the
defendant may raise the issue as to whether he caused the death under the immediate
influence of sudden passion arising from an adequate cause. If the defendant proves the
issue in the affirmative by a preponderance of the evidence, the offense is a felony of the
second degree." Tex. Pen. Code Ann. § 19.02(d) (Vernon 2003).


 "Sudden passion" is
defined as "passion directly caused by and arising out of provocation by the individual killed
or another acting with the person killed which passion arises at the time of the offense and
is not solely the result of former provocation." Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon
2003). "Adequate cause" means "cause that would commonly produce a degree of anger,
rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection." Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon 2003).
          If a defendant presents evidence of sudden passion, he or she is entitled to an
instruction on this mitigating circumstance even if the evidence raising such an issue is
contradicted, weak, or unbelievable. Trevino v. State, 100 S.W.3d 232, 238 (Tex. Crim.
App. 2003). The question is whether there was any evidence from which a rational jury
could infer such passion. Moore v. State, 969 S.W.2d 4, 11 (Tex. Crim. App. 1998). 
Anything more than a scintilla of evidence is sufficient to entitle a defendant to a sudden
passion instruction at punishment. Jones v. State, 984 S.W.2d 254, 257 (Tex. Crim. App.
1998). Finally, we note there is no requirement that evidence admitted at the
guilt/innocence phase of trial be reoffered to be considered at punishment. Trevino, 100
S.W.3d at 238. Evidence on a punishment issue will often come out in the course of the
state's own evidence regarding the circumstances of the offense itself, at the
guilt/innocence phase of trial. Id. 
          There was evidence, ignoring any inconsistencies and weaknesses, of the following: 
that Troncoso had no intent to murder or harm Macias, but only to scare him; that, when
Troncoso approached the Suburban, Macias told him he was "going to make [Troncoso]
disappear"; that Macias kicked him and hit him in the chest with his fists; that Troncoso
believed Macias had a weapon; that Macias was younger and stronger; that Troncoso was
scared; that his head "shut down" after he struck Macias with the machete; that he does
not remember the events of the altercation very well; and that Pustilnik testified the wounds
were clustered on the chest over a vital area, which generally speaks of rage or a very
aggressive posture between two people. 
          This evidence does not raise the issue of sudden passion. This evidence raises
issues of self-defense and suggests Troncoso was afraid during his attack of Macias. 
Evidence of fear alone, or self-defense, is not sufficient evidence to raise sudden passion. 
The record must show some evidence of all the elements of Tex. Pen. Code Ann.
§ 19.02(d). An actor who fears for his or her life may coolly and deliberately dispatch his
or her assailant without panic or hysteria. See Fry v. State, 915 S.W.2d 554, 559 (Tex.
App.—Houston [14th Dist.] 1995, no pet.). In addition, not all testimony of anger or fear
rises to the level of sudden passion. See Gonzales v. State, 717 S.W.2d 355, 357 (Tex.
Crim. App. 1986). For a claim of fear or anger to rise to the level of sudden passion, the
defendant's mind must be rendered incapable of cool reflection. See id. (holding that
sudden passion instruction not necessary where there was no testimony indicating
defendant was emotionally aroused at time of shooting). Testimony that the defendant
became enraged, resentful, or terrified immediately before the shooting adequately
indicates such a state of mind. Havard v. State, 800 S.W.2d 195, 217 (Tex. Crim. App.
1989) (op. on reh'g) (holding appellant's testimony he was "emotionally hurt and mad at
the time he raised his rifle" and feared for his life when he "saw two men with weapons
drawn coming toward him" was sufficient to require sudden passion instruction).
          In Fry, 915 S.W.2d at 558, Fry testified that the victim and his friend forced their way
into his house and that the victim had a wooden stake in his pocket. Fry testified he was
afraid of the victim because the deceased had a reputation of being a "trained killer," so
he obtained a rifle. Id. A short struggle ensued over the rifle, after which the victim and
his friend left the house. Id. Fry stepped onto the front porch with the rifle, and he testified
that the victim told his friend to "[g]o get the gun" and that the victim himself put his hand
in his pants pocket and threatened Fry's life. Id. Fry then shot the victim. Id. Fry testified
that he feared for his life and that he was "in quite a bit of [sic] state of shock." Id. He
further testified that he had no intention of hurting anyone and that both shots were
intended only to "scare" the victim. Id. The Houston Court of Appeals found this testimony
showed a reflective and deliberate response to a perceived threat, not a spontaneous
response to anger, rage, resentment, or terror. Id.
          The determination of whether there was evidence of sudden passion is a close one,
because it only requires a scintilla of evidence. In this case, Troncoso testified that he was
afraid, that his mind "shut down," and that Pustilnik testified the injuries to Macias generally
reflect rage or a very aggressive posture between two people. Troncoso's testimony was
that Macias kicked him, punched him in the chest, and told him he was "going to make
[him] disappear." This caused Troncoso to become afraid, so he went back to his truck
and obtained a machete. Macias was following him, so he struck him with the machete. 
Macias then went back to his Suburban. Troncoso was afraid Macias was obtaining a
weapon located in his Suburban, so he stabbed him in the chest. This evidence does not
reflect fear that was so strong and overpowering that it rendered Troncoso incapable of
rational thought and collected action. Like Fry, it evidences a reflective and deliberate
response to a perceived threat, not a spontaneous response to anger, rage, resentment,
or terror. 
          Troncoso cites Trevino, 100 S.W.3d 232. In Trevino, the defendant testified there
had been a verbal altercation between him and his wife, the victim; that his wife was angry
because she found some telephone numbers of other women in his wallet; that Trevino
was in the living room when his wife confronted him with a .38 pistol, pointed it at him, and
pulled the trigger twice; that Trevino was frightened, but the gun did not fire, so he figured
the gun was not loaded; that Trevino went to the bathroom and at some point got his
9 millimeter gun; that his wife shot at him in the bathroom; that the two then struggled over
the guns; that she was shot; that the struggle continued; and that his wife was eventually
shot three times. Id. at 239. Trevino's sister testified that, when the initial telephone call
came from Trevino after the shooting, he "was freaking out and sounded like he was
scared and panicked." Id. She drove over to the house immediately and found Trevino
"crying and shaking." Id. Trevino knelt beside his wife's body and "was upset and crying." 
Id. He appeared to be "extremely upset," and he was "pacing." Id. The detective testified
he entered the home and saw Trevino kneeling over his wife and saying, "You gotta help
her, you gotta help her." Id. He "sounded distressed." Id. Another of Trevino's sisters
testified she arrived at the scene and saw Trevino in the patrol car. Id. Trevino "looked
shocked." Id. He had "a thousand-yard stare, which, to me, is symptomatic of battle
fatigue or post-traumatic stress disorder." Id. He "looked past, beyond me. I was trying
to make eye contact with him, but due to the shock, he was looking past me." Id. The
Texas Court of Criminal Appeals found this was some evidence of sudden passion. Id.
          Therefore, in Trevino, there was evidence the defendant was "extremely upset,"
"freaking out," "scared and panicked," and "crying and shaking." In this case, there was
no such evidence of sudden passion. Troncoso's testimony did not show that his fear or
anger rendered him incapable of cool reflection, rising to the level of sudden passion. 
Instead, his testimony reflected deliberate, reflective action in obtaining the machete after
Macias kicked him, striking Macias with the machete, and then, when he perceived another
threat from Macias, obtaining a knife and stabbing Macias in the chest.


 This testimony
is not evidence he was rendered incapable of cool reflection. 
          In addition, Troncoso initiated the confrontation. When a defendant initiates the
criminal episode, the victim's subsequent acts of violence do not constitute adequate cause
from which sudden passion may arise. Adanandus v. State, 866 S.W.2d 210, 231 (Tex.
Crim. App. 1993) (applying former Section 19.04 of the Penal Code and holding that
defendant not entitled to instruction on voluntary manslaughter because bank customer's
conduct of tackling bank robber was not "adequate cause" for robber's alleged sudden
passion in shooting customer). Stated another way, the provocation must not have been
itself provoked by the person seeking to avail himself or herself of the sudden passion
instruction to the jury. Willis v. State, 936 S.W.2d 302, 308–09 (Tex. App.—Tyler 1996,
pet. ref'd). When an appellant creates the circumstances which inflame his or her passion,
a charge on sudden passion is not required. Id. Troncoso testified he followed Macias for
ten minutes, and once both vehicles were stopped, Troncoso approached Macias'
Suburban and started kicking the door. Therefore, Macias' subsequent acts, in these
circumstances, do not constitute adequate cause from which sudden passion may arise. 
This point of error is overruled.
Conclusion
          The trial court did not abuse its discretion in admitting the autopsy photographs
introduced during Pustilnik's testimony because their probative value to establish the
elements of murder as alleged in the indictment, and to rebut Troncoso's assertion of self-defense, were not substantially outweighed by any undue prejudice. In addition, there was
no evidence Troncoso acted under the immediate influence of sudden passion arising from
an adequate cause. Therefore, the trial court did not err in refusing to submit a charge on
sudden passion to the jury on punishment. 
 

          We affirm the judgment. 



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      March 12, 2004
Date Decided:         March 24, 2004

Do Not Publish